ISIDOR WASSERVOGEL et al., as Trustees, Landlords, *v.* MAXWELL BECKER, Tenant.*

Municipal Court of the City of New York, Borough of The Bronx, May 22, 1948.

* See, also, *Wasservogel* v. *Meyerowitz,* 191 Misc. 594.

[text obscured]

*Barnet Kaprow* and *Bertram A. Levine* for landlords.

*David L. Minkoff* for tenant.

FRANK, J. This is a nonpayment summary proceeding. In addition to the above-entitled cause, numerous other summary proceedings affecting several hundred tenants and involving rent increase orders have been tried and are awaiting decision. The final order to be signed in each proceeding will be based upon the conclusions reached herein. Some elaboration of the issues involved is necessary, therefore, to include the salient questions raised in each of the cases.

The landlords are trustees appointed by the Supreme Court to conserve and administer the assets, derived from defaulted mortgages, belonging to some 4,000 certificate holders. In such representative capacity the trustees were under a duty to seek an increase in rents, if the operating costs of the property warranted such action. Neither the integrity and the good faith, nor the propriety of the action taken by the trustees, were questioned at the trial. Similarly, no criticism was leveled at the official conduct of the Bronx area director or the employees of his office.

The tenant occupies a four-room apartment known as 2F in premises 1430 Plimpton Avenue, The Bronx, by virtue of a two-year lease, the termination date of which was November 30, 1947. The specified rent was $59 per month, payable in advance. The agreement contained an escalator clause, as follows: " The rent herein provided for is the maximum rent which the Landlord may collect under the O.P.A. rent regulations in force at the time of the execution of this lease. In the event that at any time during the term of this lease, or any renewal or extension thereof, such regulations against collecting higher rents are

cancelled or modified, or if the O.P.A. grants an increase of the rental of the demised premises, the tenant will pay a rental of $65.00 per month, or as much thereof as is legally permissible or allowed, commencing the first day of the calendar month following the cancellation or modification of such regulation, or the allowance of an increasing of the rental of the demised premises, as the case may be.''

The trustee's petition alleges that there was due them on April 1, 1948, the sum of $90.50 computed as follows: $63.50 for the month of April and $4.50 per month from October, 1947, through March, 1948, inclusive, computed at $27. It is further alleged that although duly demanded, the tenant refused to pay said sum of $90.50.

This increase of rent of $4.50 per month for the month of April, 1948, and for each of the preceding six months, is demanded by virtue of an order increasing the maximum rent for this apartment from $59 to $63.50, issued by the New York area rent director of the Office of the Housing Expediter, pursuant to paragraph (12) of subdivision (a) of section 5 of the Controlled Housing Rent Regulation for the New York City Defense-Rental Area (12 Federal Register 4295, 4298–4299), which reads as follows:

'' Sec. 5. *Adjustments and other determinations.* In the circumstances enumerated in this section the Expediter may issue an order changing the maximum rents otherwise allowable * * *.

'' (a) *Grounds for increase of maximum rent.* Any landlord may file a petition for adjustment to increase the maximum rent * * * on the grounds that:

'' (12) *Substantial hardship from increase in property taxes or operating costs.* Substantial hardship has resulted from a substantial decrease in the net income * * *.''

This regulation was adopted following the expressed direction and intent of the Congress as enunciated by the declaration of policy in section 201, and directions to the Expediter in subdivision (b) of section 204 in the Housing and Rent Act of 1947 (U. S. Code, tit. 50, Appendix, § 1881 *et seq.*)

At the trial, the testimony, by way of proof received and concessions made, established that there was a demand upon the tenant for rent of $63.50, alleged to be due for the month of April, and for a total of $90.50; that the rent receipts delivered to the tenant for the months from October, 1947, through March, 1948, were unqualified and contained no limitations; that the application for an increase in the maximum rent was filed by

the landlords on September 29, 1947; that no thirty-day notice was served on the tenant demanding the increase.

The issues raised by the pleadings and upon the trial are threefold:

First: Is a thirty-day notice to be served upon the tenant required as a condition precedent to the commencement of the proceedings?

Second: Are the landlords entitled to a final order for the tenant's refusal to pay the increase in rent retroactively to October 1, 1947?

Third: Are the landlords entitled to a final order for the tenant's refusal to pay the increase in rent for April, 1948?

It is asserted by the tenant that before his rent can be increased, he is entitled to a thirty-day notice of such proposed increase, and the landlords' failure to give such notice is fatal and a bar to these proceedings. While the tenant in the instant case does not urge that sections 228 and 232-a of the Real Property Law should be specifically applied here, others similarly situated have done so.

A reading of these sections patently discloses that both refer to termination of tenancies. In one, the section is applied to tenancies at will or by sufferance; in the other, the clear reference is to tenants from month to month and monthly tenants. No other statutory enactment requiring notice and applicable to these proceedings has been brought to the attention of the court, and none certainly which contains any definite requirement for a notice to increase rent.

The only section requiring notice in the Housing and Rent Act (§ 204, subd. [e]) refers to possessory proceedings for reasons other than nonpayment of rent.

There is no serious dispute, nor can there be, that the tenancy now under consideration became " statutory " upon the expiration of the lease on November 30, 1947. It would serve no purpose to elaborate upon the nature, duration and significance of this relationship between owner and occupant. The decisions of our appellate courts have quite completely analyzed and defined it. (*Stern* v. *Equitable Trust Co.*, 238 N. Y. 267; *People ex rel. Durham Realty Corp.* v. *La Fetra*, 230 N. Y. 429; *440 West End Ave., Inc.*, v. *Dempster*, 200 App. Div. 101; *Fawcett Publications, Inc.*, v. *New World Club, Inc.*, 72 N. Y. S. 2d 768.)

It has become the established rule that in such tenancies, all of the provisions of the original agreement, not inconsistent with the statutory restraints, except for the rent reserved and the term, are projected into and become a part of the relation-

ship imposed upon the parties by law (*Barrow Realty Corp.* v. *Village Brewery Restaurant,* 272 App. Div. 262; *Glauberman* v. *University Place Apts., Inc.,* 188 Misc. 277, affd. 272 App. Div. 758; *130 West 57 Corp.* v. *Hyman,* 188 Misc. 92; *Klipack* v. *Raymer Novelties, Inc.,* 273 App. Div. 54; *Shelton Bldg. Corp.* v. *Baggett,* 188 Misc. 709).

Thus, the escalator clause hereinbefore quoted becomes a part of the enforcible provisions of the lease which continue into the statutory relationship (*130 West 57 Corp.* v. *Hyman,* 188 Misc. 92, *supra*; *Friedman* v. *Hogan Co.,* 188 Misc. 548).

Had the Legislature or the Congress, when considering the rent acts, intended to include either statutory tenants or tenants from whom rent increases are demanded in the categories of those to whom preliminary notice should be given, it must be assumed that new legislation or appropriate amendment of the present provisions would have been enacted.

It may well be that under the present housing emergency, a tenant should be given notice that the landlord proposes, if permitted to do so, to increase the rent. Judicial opinion cannot, however, be substituted for legislative action. The courts cannot supply that which the law-creating authority fails or refuses to provide.

To attempt, therefore, to spell into the appropriate sections, a requirement that a thirty-day notice, or that any notice must be given, would do violence to the clear language of those provisions.

In *1239 Madison Ave. Corp.* v. *Neuberger* (208 App. Div. 87) the court said (pp. 89, 91): " The Appellate Term * * * determined that the Municipal Court correctly decided that section 232 of the Real Property Law did not apply, and that the same reasoning negatived the conclusion that the defendant was a tenant from month to month, and after reversing the judgment of the lower court, dismissed the complaint upon the merits. (200 N. Y. Supp. 174.) From this judgment plaintiff appeals. * * * The determination appealed from was correct and should be affirmed ".

Section 232 in the quoted portion of the opinion is, by virtue of chapters 130 and 209 of the Laws of 1920, now known as section 232-a of the Real Property Law.

In *Arthur Equities, Inc.,* v. *Horlly* (57 N. Y. S. 2d 17, 18) it was said: " The premises * * * were rented for a single month * * * and not on a month to month basis. Accordingly, the thirty days' notice prescribed by section 232-a, Real Property Law, is not required ".

As Mr. Justice Lehman said in *Rogan* v. *Weiss* (115 Misc. 193, 194-195): " * * * it would be unreasonable to hold that the legislature intended that before bringing an action against a monthly tenant whose term has expired, the landlord must serve upon the tenant a notice ".

The first issue must, therefore, be answered in the negative, and it must be held that no thirty-day notice is required (*Lewittes & Sons* v. *Spielmann*, 190 Misc. 35).

The second question to be determined is whether or not the landlords are entitled to collect increased rent retroactively to October 1, 1947.

The present Federal legislation affecting housing and rents was based in theory at least upon the New York State legislation enacted during the housing shortage which followed World War I.

The New York State Emergency Rent Laws of 1920 proved to be wise and effective in the protection of both landlords and tenants. Briefly, that legislation enabled an owner to receive a fair return from his investment, if after giving a tenant notice of his intention to increase the rent, he commenced an action therefor. The plaintiff was required to file a bill of particulars in such an action, setting forth the items of increased cost which reduced or eliminated his net income. Upon a trial, he was required to prove his case. The tenant had an opportunity in a judicial proceeding to cross-examine the landlord and his witnesses, and to search into the items upon which the action for an increase was based. With constitutional safeguards effectively in force, landlords in proper cases obtained increases. By the same token, tenants were protected from gouging and grasping owners seeking to extract every possible penny of profit from the human misery that a housing shortage spawns.

The Congress, upon the theory that immediate relief would be available to those concerned, provided that an administrative agency, rather than judicial process, enforce the laws designed to control housing and rents in the present public emergency.

By the creation of the Emergency Court of Appeals, the price control acts provided some measure of protection to persons " aggrieved." With the abolition of these laws and the substitution of the Housing and Rent Act, the Congress in 1947, eliminated the jurisdiction of the Emergency Court of Appeals without conferring jurisdiction in any other judicial tribunal (U. S. Code, tit. 50, Appendix, §§ 1891-1899). In the 1948 amendments (Public Law 464, 80th Cong.) it recreated jurisdiction in that court but limited its powers to disputes between the Expediter

and the local boards. It thus appears that in the face of an increasing housing shortage and mounting pressure for higher rents, the Congress has seen fit to relax, restrict and narrow controls and to curtail judicial power to interfere in proper cases.

In contrast to the sound provisions of the New York rent legislation of 1920, under Congressional fiat, owners of housing units, pursuant to paragraph (12) of subdivision (a) of section 5 of the rent regulation, may obtain rent increases in so-called " hardship cases " without notice to the tenants. Nor do the tenants have the privilege of being present at a hearing, the right to cross-examine the landlord or his witnesses, or the opportunity to examine the books or records upon which such increases are presumably based.

The order of the area rent director upon which the increase in rent is sought, contains the following: " Issued Mar. 25, 1948 and effective Sept. 29, 1947. This order is now in effect and will remain in effect until changed by the Housing Expediter."

. Another paragraph states: " Notice to Tenant — This office did not give you prior notice of your landlord's petition because the operating figures submitted by him were confidential. However, his operating figures were carefully reviewed by this office before this order was issued."

Why the data upon which an applicant obtains an increase of rent should be treated as confidential as against the person who must pay more for a commodity as essential as housing is hard to understand. Much less difficulty, suspicion, and resentment would result if a disclosure of the facts made it apparent to the tenant that the landlord was fairly entitled to additional rent because of the increased cost of operation. The aura of secrecy surrounding the procedure creates a repugnance to it.

No definite ceiling is set. The only limitation to increase of rents is in the execution of voluntary leases. The statutory tenant is compelled to rely upon the judgment of an area rent director in the determination of the equities affecting the increase he may be required to pay.

The Congress, by substituting clerks, inspectors, accountants and others for judicial function, did not accomplish its purpose of speed and simplification of procedure, when it appears, as here, that an application for an increase, filed in September, 1947, was not granted until March 25, 1948.

The legislation, viewed in this light, may appear to be so violative of our concepts of basic democratic principles that it raises serious question as to its constitutionality. Such questions have been resolved. The United States Supreme Court has, in many decisions, sustained the power of the Congress to enact the laws upon which these proceedings are based. So too, has it sustained the power of the Expediter to promulgate regulations and to issue orders based thereon (*Woods* v. *Stone,* 333 U. S. 472; *Bowles* v. *Lake Lucerne Plaza,* 148 F. 2d 967, certiorari denied 326 U. S. 726; *Yakus* v. *United States,* 321 U. S. 414; *Bowles* v. *Carruthers,* 152 F. 2d 603; *New York City Housing Authority* v. *Rokaw,* 54 N. Y. S. 2d 570).

In *Woods* v. *Stone* (333 U. S. 472, 474, *supra*) decided March 15, 1948, Mr. Justice JACKSON, writing for the majority, said: " Taking the legislation, the regulations and the order to be valid exercises of governmental power, as we are thus required to do ".

It has been judicially determined that the Congress has complete power to create, withhold, restrict or withdraw the jurisdiction of the inferior Federal courts (*Kline* v. *Burke Constr. Co.,* 260 U. S. 226, 234; *Taylor* v. *Brown,* 137 F. 2d 654). It may also vest exclusive jurisdiction in Federal courts over causes arising under Federal laws (*The Moses Taylor,* 71 U. S. 411, 429).

Mr. Chief Justice STONE, writing for the court in *Yakus* **v.** *United States* (321 U. S. 414, 443, *supra*), said: " Measured by these standards we find no denial of due process under the circumstances in which the Act was adopted and must be applied ".

In *Bowles* v. *Lake Lucerne Plaza* (148 F. 2d 967, 970, *supra*), the Circuit Court of Appeals said: " But neither this court nor the court below has jurisdiction to consider the validity, the inconsistency or the arbitrariness of administrative orders * * *. Neither this court nor the court below can set aside or modify the orders of the Rent Director or the orders of the Administrator. We can only construe and enforce them."

The landlords contend that the Expediter had the authority to issue the order in question here by virtue of amendment 5 to the Controlled Housing Rent Regulation for the New York City Defense-Rental Area. Section 13 of the amendment reads in part as follows (13 Federal Register 1866): " In all cases under paragraph (a) of this section the adjustment in the maximum rent shall be effective as of the date of the filing of the landlord's petition."

If this regulation were in force prior to September 29, 1947 (the date when the landlords' petition was filed), then, in the absence of any other impediment, it would be enforcible although retroactive under the authority of *Woods* v. *Stone* (*supra,* pp. 477–478), wherein it was said: "*By legislation and regulation in force before the collections were made,* the landlord's own default \* \* \* had rendered these payments conditional, subject to revision and to refund. Readjustment under these conditions cannot be said to be retroactive law. making." (Italics ours.)

The regulation in question, however, became effective on January 30, 1948. The order issued thereafter attempting to increase the rents retroactive to a time preceding the effective date of the regulation upon which it was based should not and cannot be enforced for that period of time. The decisions upholding retroactive orders do so because there were regulations in existence permitting the issuance of such orders. That the Expediter recognized this principle cannot be doubted since the regulation was adopted shortly after a significant decision of the Emergency Court of Appeals (*Markbreiter* v. *Woods,* 163 F. 2d 993) decided November 6, 1947.

In that case, Chief Judge MARIS said (pp. 994–995):

"The order under attack was issued under Section 5 (D) of the Rent Regulation upon the Rent Director's initiative. As we have said, it was issued on October 23, 1946, but purported to fix the rent retroactively from November 1, 1943, a period of nearly three years, which included the period of Dauman's occupancy of the apartment. The complainants urge that the order is invalid in toto because issued without procedural due process and that in any event it is invalid to the extent that it purports to fix the maximum rent retroactively for the period from November 1, 1943, to October 23, 1946.

"The latter objection is well taken. Section 5 (d) of the Rent Regulation does not authorize the Administrator to fix maximum rents retroactively. On the contrary, as counsel for the respondent conceded at bar, orders under Section 5 (D) may validly be given prospective effect only. Indeed in so stating counsel merely followed prior formal rulings of the Administrator."

Whether the landlords are entitled to a final order for the increased rent for the period from January 30, 1948, to March 30, 1948, presents a somewhat different problem. Under the legislation, the regulation, the order, and the decisions cited herein, it must be held that the order increasing the rent subsequent to January 30, 1948, has legal sanction.

As already stated, this is a nonpayment summary proceeding. The provisions governing are contained in section 1410 of the Civil Practice Act. The statutory basis for the removal of the tenant is the holding over by the tenant without permission from the landlord. By the acceptance of the rent tendered, the landlord in effect grants permission to the tenant to remain in possession. In this State the rule has long been followed that a landlord cannot use the statutory remedy of summary proceedings to collect back rent.

As was said in *Tolk* v. *Cohen* (62 Misc. 230, 231): "In accepting payment for the October rent, the landlords clearly sanctioned the action of the tenant in holding over, or remaining in possession, up to that time. Under those circumstances the tenant's possession of the premises for the month of September cannot be said to have been without the permission of the landlords."

In *117–127 West 48th St. Corp.* v. *Mellar* (71 N. Y. S. 2d 19) it was said: "While the landlord was entitled to a final order the tenant may be dispossessed for nonpayment of the monthly rent only, not for nonpayment of the additional rent".

Since a final order awarding possession cannot be granted for back rent or additional rent, the final order in the above-entitled proceeding will not include any award for rent prior to the month for which the proceedings were brought.

Whatever rights the landlords may have to recover any additional or back rent pursuant to the retroactive order for any period to January 30, 1948, should, therefore, be determined in an appropriate action. In view of the foregoing, it is unnecessary for this court to decide whether the defenses of accord and satisfaction, waiver and estoppel are applicable.

The distinction between a statutory tenant bound by an escalator clause, as here, or a statutory tenant without a prior lease is immaterial to this determination. The right of the landlords to recover is not dependent upon the tenant's agreement to pay such an increase but upon the authority of the Office of Housing Expediter to issue the order.

The third and final question, viz., whether the landlords are entitled to a final order for the failure of the tenant to pay the rent as increased by the order in question for the month of April, 1948, must be answered in the affirmative. Since this court has no power to inquire into the propriety of the order and since the area rent director has the power and authority to issue such an order under the rent regulation and the Housing

and Rent Act, this court has no alternative but to grant the relief sought by the landlords.

What redress, if any, will be available to tenants confronted with an order increasing maximum rents which may be oppressive, it is difficult to foretell. The United States Supreme Court, under the now defunct Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 901 *et seq.*) granted relief to tenants against whom a certificate authorizing eviction was obtained. In that case, however, a sharp distinction was drawn between such a certificate and an order fixing rent (*Fleming* v. *Parker,* 329 U. S. 531, 538).

Mr. Justice BLACK, writing for the majority, said: " This situation is altogether different, in terms of administrative complications and the impact of the order on the individual, from one in which a consumer member of the public wishes to attack a general price-fixing regulation which will require him to pay higher prices, *or even a tenant to pay higher rent."* (Italics ours.)

The Housing and Rent Act provides for review only within the agency itself. Until the order is modified or changed by the area rent director or the Expediter, this court may not disregard it.

The rent for the month of April has not been paid. A final order will be entered for the landlords. The rent for the month of April is fixed at $63.50. Five-day stay.