Sarah **JETER**, on behalf of herself and all other tenants similarly situated, Plaintiff,

v.

Andrew D. **KERR**, Individually and as Administrator of the New York City Housing and Development Administration, et al.,

**and**

R. O. R. **Realty Corp.**, Individually and on behalf of all other landlords similarly situated, Defendants.

No. 73 Civ. 5279.

United States District Court, S. D. New York.

Feb. 20, 1974.

Gerald Mann, The Legal Aid Society, New York City, for plaintiff; Michael D. Hampden, Steven Ney, New York City, of counsel.

Harry Michelson, New York City, for City Rent Agency, Office of Rent Control, Dept. of Rent and Housing Maintenance; Arthur Kass, New York City, of counsel.

Fellner & Rovins, New York City, for defendant R.O.R. Realty Corp.

### MEMORANDUM

LASKER, District Judge.

Plaintiff, a tenant of a rent controlled apartment in New York City, sues on behalf of herself and others whose rentals for 1974 and thereafter will be increased as a result of "Maximum Base Rent" ("MBR") orders issued by city rent agency officials pursuant to New York City Administrative Code § Y51–5.0(a)(4) and (5) and New York City Rent Regulations §§ 25 and 26. Approximately one million tenants make up the proposed plaintiff class. Defendants are the New York Housing and Development Administration and the New York City Department of Rent and Housing Maintenance in charge of the Office of Rent Control ("the City"), and R.O.R. Realty Corp. (plaintiff's landlord), individually and on behalf of all other landlords similarly situated, that is, all the landlords of plaintiff class ("the landlord defendants"). Jurisdiction is alleged under 42 U.S.C. § 1983.

### I.

Plaintiff claims that the practice of the city defendants of issuing MBR orders to landlords (permitting rent increases of up to 7½%) without affording tenants prior notice and hearing constitutes state action violative of due process. She moves for a preliminary injunction restraining the landlord defendants from instituting summary eviction proceedings against members of the proposed plaintiff class for failure to pay the 1974 MBR increases pending determination of this case on the merits,

and mandatorily enjoining the City defendants to give notice to the plaintiff class that their landlords have been so restrained. Plaintiff claims such relief is required because (1) the City rent agency is currently preparing 1974–75 MBR orders which will be immediately collectible by landlords; (2) there exists no administrative opportunity for tenants to contest the facts on which the increases are based prior to collectibility; (3) consequently, if preliminary injunctive relief is denied, tenants may be faced with the hard choice either of paying possibly unjustified increases which will work a hardship on many families, or losing their homes through an eviction proceeding for non-payment of the amount of the MBR rent increase.

The Court of Appeals for this Circuit has recently reiterated the rules which guide a district court in deciding a motion for a preliminary injunction:

> "We repeatedly have emphasized the heavy burden on a party seeking the extraordinary remedy of preliminary injunctive relief. The standard that has evolved is that the moving party 'assume[s] the burden of demonstrating *either* a combination of probable success and the possibility of irreparable injury or that [it has] raised serious questions going to the merits and that the balance of hardships [tips] sharply in [its] favor.' Stark v. New York Stock Exchange, 466 F.2d 743, 744 (2d Cir. 1972) (emphasis added); Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir.), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969)." Pride v. Community School Board, 482 F.2d 257, 264 (2d Cir. 1973); *accord,* Pride v. Community School Board, 488 F.2d 321 at 324 (2d Cir. 1973).

## II.

Recent authority in this Circuit dealing with the rights of tenants in publicly assisted or publicly administered housing supports plaintiff's claim that due process requires some opportunity to be heard prior to a rent increase. Escalera v. N. Y. City Housing Authority, 425 F.2d 853 (2d Cir. 1970), Burr v. New Rochelle Municipal Housing Authority, 479 F.2d 1165 (2d Cir. 1973). In *Burr,* the case most closely in point, the Court of Appeals held that the Municipal Housing Authority was required to accord notice and the opportunity for written submissions by tenants before promulgation of an across-the-board service charge or rent increase. However, in so holding, it modified the decision of the District Court, which had held that a full adversary hearing was required. Since *Burr* suggests that plaintiff—who also claims that a full adversary hearing is required—is unlikely to be granted the far-reaching relief that she seeks, the question on this motion for preliminary relief is whether, following the trial on the merits, she is likely to gain substantially "more" due process than present procedures now provide.

As the MBR regulatory scheme presently operates, a landlord applies to the City for MBR rent increases (which are computed by statutory fomula) after certifying that he is maintaining all essential services, that there are no rent-impairing violations and that he has actually expended 90% of the amount allowed for operating and maintenance expenses. The landlord's certification is checked by the City against the record of violations, if any, for each building. Where there are violations, MBR orders are withheld on notice to the parties.

Tenants may, of course, complain at any time to the proper city agency regarding violations in their buildings, and the posting of such a violation with the City consequently affects the determination of a landlord's eligibility for an MBR increase. Furthermore, the City Administrative Code (§ D26–51.01 (f)(i) and the Civil Court Act and Rules (§ 2900.35) provide for an application by a tenant to the Housing Part of the Civil Court to obtain an order directing the City to place a violation on a building if

the City has not done so after notice by the tenant.

Additionally, the New York City Rent Law, § Y51–8.0 of the Administrative Code, provides for the filing of written protests by a tenant after the issuance of an MBR order. The city rent agency is required to respond to the protest within a reasonable time, and may notice a hearing or permit the tenant to submit further evidence in connection with his filing. The denial of a protest must set forth the grounds for the decision, and is appealable in New York Supreme Court.

■ Since plaintiff makes no claim regarding the constitutionality of the standards by which landlords' qualifications for MBR increases are measured, the prior hearing she presses for in this lawsuit would be only a fact-finding inquiry into the level of services provided by a landlord. Plaintiff and defendants agree that tenants are, of course, best situated to know of any building violations. Yet the existence in the *present* scheme of both formal and informal mechanisms for tenants to lodge complaints with the City regarding claimed violations may well meet the requirements of *Burr*, undercutting plaintiff's assertions of probability of success on the merits.

■ Moreover, the fact that this case involves administration of an MBR program affecting over one million tenants of varying income levels, while *Escalera* and *Burr* involved only low-income housing administered by municipal housing authorities, may be a legally significant difference, in view of the settled rule that due process requirements vary according to the severity of the private interest and the government burden involved. Langevin v. Chenango Court, 447 F.2d 296 (2d Cir. 1971), cited with approval in *Burr, supra*. In view of this rule and the possibility that city's present procedures may well meet the requirements of *Burr*, we are unable to conclude that plaintiff will probably succeed on the merits.

### III.

Plaintiff argues next that a preliminary injunction is required because the validity of MBR orders cannot be attacked in an eviction proceeding and that consequently class members who fail to pay a disputed MBR rent increase may lose their homes before this case is tried on the merits. This assertion, however, finds no support in the relevant sections of the New York R.P. A.P.L. (§ 711, governing proceedings to recover possession) or the MBR statute and regulations, which do not mention eviction proceedings. The cases cited by plaintiff seem to us to be off the point. In Ament v. Cohen, 16 A.D.2d 824, 228 N.Y.S.2d 1001 (1962), a tenant sued her landlord to recover alleged overpayments of rent, in excess of maximum rent set by the local rent administrator. The court held that the defendant landlord was precluded from collaterally attacking the maximum rent determination which had already been twice litigated in administrative proceedings, and in the Supreme Court of New York, from whose findings the landlord had not appealed.

Kliegman v. McGoldrick, App.Div., 140 N.Y.S.2d 509 (1955), was an action by a landlord to review a determination of the State rent administrator, and, like *Ament, supra*, did not involve an eviction proceeding.

The decision in Wasservogel v. Becker, 191 Misc. 599, 79 N.Y.S.2d 526 (1948) is closer to home. *Wasservogel* was a summary proceeding for non-payment of rent in which the tenants claimed they were entitled to notice before a rent increase order by the local administrator under the Housing and Rent Act of 1947, 50 U.S.C.A. Appendix § 1881 et seq. The court held that notice was not required. The statute involved in *Becker* conditioned rent increases on the landlord's showing of substantial hardship from property tax increases or operating costs, rather than the showing of adequate services rendered to the tenants required under the MBR law. In our view, however, *Becker*

is not strong authority for plaintiff's assertion that a landlord's violations, and the resulting voidability of an MBR order, cannot be raised as defenses in a proceeding for non-payment of an MBR increase. *Becker*, decided in 1948, explicitly characterizes the Rent Act as emergency legislation and long pre-dates the due process "revolution" in the rights of tenants and others aggrieved by administrative action.

No case or statute of which we are aware prevents a tenant of a rent-controlled building from raising as a defense in a proceeding for non-payment of rent the fact that the landlord is not legally entitled to the MBR order, and that *the only rent due* is the amount payable prior to the issuance of the order. We note that the Court of Appeals in *Escalera, supra*, 425 F.2d at 864, seems to assume that tenants of public housing may contest the fairness of rent increases in a proceeding for non-payment. Indeed, to prevent such a defense from being raised would be of doubtful constitutionality. In the absence of state court authority on this question, we assume that state courts would rule consistently with *Escalera* and would construe the controlling legislation accordingly. If and when a tenant attempts without success to raise such a defense in an eviction proceeding for non-payment of an MBR increase, plaintiff may renew her application for a preliminary injunction.

Plaintiff also claims that for many low-income families, who make up at least part of the proposed class, the payment of a rent increase may work a real hardship, and that ultimately prevailing in a protest lodged with the city rent agency will not undo this hardship. While we take judicial notice of the fact that for many families even the small increases contemplated by the MBR statute may have a significant impact on their budgets, we are loath to grant such broad-ranging injunctive relief on generalized arguments alone. We have already noted that the city's existing procedures provide at least some opportunity for tenant participation in the factual determination whether a landlord qualifies for an MBR order. Plaintiff's claim of substantial harm to the class, therefore, must stand, if at all, on a showing that the procedures are ineffective, and that many landlords who are ineligible under MBR regulations for a rent increase nonetheless receive MBR orders, resulting in substantial hardship to the class. No such showing has been made here. There are no *facts* before us establishing the extent and degree of hardship to the class or the relative effectiveness or ineffectiveness of the city's present procedures for screening ineligible landlords. The affidavit of Sarah Jeter, in support of the motions for a preliminary injunction and class action determination, is the only affidavit filed by members of the proposed class. She does not state that her landlord has been improperly granted an MBR order; indeed, it appears from the affidavit of Arthur Kass, in opposition, that plaintiff's landlord is presently ineligible for an increase since the city has found a number of violations in her building.

### IV.

The City Council of the City of New York by legislation enacted in 1973 repealed the MBR program which is at issue here. However, the Appellate Division of the First Department of the Supreme Court of New York recently held the repeal was without authority and invalid. 210 E. 68th St. v. City Rent Agency, 350 N.Y.S.2d 424. Since it appears from the affidavit of Arthur Kass, in opposition to the motion for a preliminary injunction, that the Court of Appeals of New York will hear argument on that issue during the February 1974 term, the present lawsuit may well be mooted by the decision of the Court of Appeals. Because the parties agree that consideration of the merits of the case should abide the decision of the New York Court of Appeals, we defer consideration of plaintiff's motion for a class action determination and defendant

R.O.R.'s motion to dismiss pending that decision.

The motion for a preliminary injunction is denied without prejudice to renewal on sufficient evidence including a showing that a member of the plaintiff class has raised, without success in the state courts, the invalidity of an MBR order as a defense in a proceeding for non-payment of rent.

It is so ordered.