**Daniel BURR et al., Plaintiffs-Appellees,**

v.

**The NEW ROCHELLE MUNICIPAL HOUSING AUTHORITY et al., Defendants-Appellants.**

**No. 688, Docket 72-2425.**

United States Court of Appeals, Second Circuit.

Argued April 9, 1973.

Decided May 25, 1973.

· Michael J. Dale, The Legal Aid Society of Westchester County, New Rochelle, N. Y. (Martin A. Schwartz, White Plains, on the brief), for plaintiffs-appellees.

Richard L. Baltimore, New York City, for defendants-appellants.

Jeanne Hollingsworth, New York City Housing Authority, New York City, for amicus curiae.

Maria L. Marcus, New York State Commissioner of Housing, New York City, amicus curiae.

Before SMITH, HAYS and TIMBERS, Circuit Judges.

HAYS, Circuit Judge.

This is an appeal from an order of the United States District Court for the Southern District of New York granting plaintiffs' motion for summary judgment. The district court found that plaintiffs had a right under the due process clause of the Fourteenth Amendment to notice and a full adversary hearing before being required by the New Rochelle Municipal Housing Authority to pay higher rents or an across-the-board service charge. The court ordered the Authority not only to serve on the tenants a written notice of a public hearing but also to provide an opportunity to exchange evidence prior to the hearing. The court also held that due process required the oral presentation of evidence by the Authority, representation of the tenants by selected representatives, assisted by counsel, an opportunity to introduce rebuttal evidence, a stenographic verbatim transcript of the hearing, and a written determination by the Authority Board of Review based upon the evidence presented at the hearing.

Although we hold that due process requires certain procedural safeguards before an across-the-board rent increase can be imposed by a municipal housing authority, we do not agree that a formal adversary hearing with attendant procedures is necessary. We therefore modify the judgment of the district court and affirm it as modified.

Plaintiffs are tenants in apartments controlled and operated by the defend-

ant New Rochelle Municipal Housing Authority, a public corporation organized under New York State law, to provide low rent housing for persons of low income. On June 24, 1971, the Chairman of the Housing Authority sent to all tenants residing in the Authority's housing, notice of the imposition of a service charge of $2.00 per room per month for each apartment, effective August 1, 1971.[1] The Authority states that the service charge was made necessary because of the increasing deficits the Authority faced, due primarily to increased utility costs.

The Authority has three sources of income:

    (a) Subsidy from the State of New York;

    (b) Subsidy from the City of New Rochelle;

    (c) Rental income from the tenants.

According to the Authority it proved impossible to get any additional subsidy from either the city or the state[2] to meet the deficits; therefore the choice confronting the Authority was either to raise the rents, through a service charge in this instance, or decrease the services provided the tenants. The Authority chose the former course and the service charge became effective August 1, 1971. Five hundred and twenty tenants were affected by this action; four hundred and forty-five are paying the

service charge. Several tenants including some of those paying the service charge and some who refused to pay, instituted this action under 42 U.S.C. § 1983 seeking a declaration that the across-the-board rent increase was invalid and enjoining the adoption of any such increase unless the tenants were accorded a hearing. As we have noted, the district court granted summary judgment for the plaintiffs.

## I.

◼ To begin with, we must reject appellants' contention that the New Rochelle Municipal Housing Authority is not a government agency, and that the 14th Amendment does not apply because there is no State action. This court has held that the actions of the Authority are State actions within the meaning of § 1983. King v. New Rochelle Housing Authority, 442 F.2d 646 (2d Cir.), cert. denied, 404 U.S. 863, 92 S.Ct. 113, 30 L.Ed.2d 107 (1971). The district court was clearly correct in finding that

> "The facts and prior case law mandate the conclusion that [the Housing Authority's] official actions are actions taken under color of State law."

## II.

Since the action of the Authority in imposing the service charge was State action, and the "interest at stake" (see

---

1. The notice read as follows:

                    June 24, 1971

  TO THE TENANTS OF HARTLEY HOUSES, MAC LEAY APARTMENTS and BRACEY APARTMENTS:

It is with great regret that we must inform you that in order to meet current expenses and to prevent a deterioration in the services rendered to you, it is mandated that we make a service charge of $2.00 per room per month for each apartment.

This service charge is uniform. We have exhausted every other possible remedy before taking this action and have, in fact, been criticized for our delay in placing this service charge despite the fact that other authorities have im-

posed it for a period of time prior to this.

The increase will be reflected in your rent statement for the month beginning August, 1971.

    Sincerely yours,

    NEW ROCHELLE MUNICIPAL HOUSING AUTHORITY

2. State subsidies for public housing are regulated and limited by law (Public Housing Law, § 73 [McKinney's Consol. Laws, c. 44-A, 1972–1973 Supp.]). The total amount of money available for this purpose is fixed by the procedures set forth in Article XVIII, § 3 of the New York Constitution and cannot be increased unless the electorate approves an increase in subsidies.

Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972)) was of such a nature as to be within the protection of the Fourteenth Amendment, the remaining question is the extent of the procedural safeguards required by the concept of due process. See Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). See generally, Note, Procedural Due Process in Government-Subsidized Housing, 86 Harv.L.Rev. 880 (1973).

A. The nature of the interest

The interest at stake here is clearly substantial. As this court said in Escalera v. New York City Housing Authority, 425 F.2d 853, 864 (2d Cir.), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970):

". . . the small size of the 'additional rent' charges [cannot] be relied on to deny tenants automatically fair procedures. To be sure, the size of the charges is relevant to the question of the burdensomeness of the required procedures, but even small charges can have great impact on the budgets of public housing tenants, who are by hypothesis below a certain economic level."

As a result of the service charge the plaintiffs in this action are required to pay roughly 10% more per month for their apartments.

Daniel Burr—raised to $113.00 from $102.00

Ethel Gary—raised to $99.00 from $90.00

Willie Riley—raised to $112.00 from $101.00

J. Smith—raised to $112.00 from $101.00

B. The burden of administration

The administrative burden occasioned by the requirement of full adversary hearings would be a very heavy one. Some five hundred tenants are directly involved in the imposition of the service charge by the New Rochelle Municipal Housing Authority and tenant representation at an adversary hearing would be difficult but perhaps not impossible. The district court ordered that a single hearing be held at which the 520 tenant families were to be represented by 4 persons, with the other tenants having the right only to attend and observe. The attorney for the tenants was to be one of the four representatives. The court then broke down the 520 tenants into three groups, each with one representative, as follows:

"The approximately one hundred seventy-five (175) tenants who receive public assistance shall be entitled to one (1) representative. The approximately one hundred thirty-nine (139) tenants whose individual incomes exceed seven thousand ($7,000) dollars shall be entitled one (1) representative. The balance of two hundred six (206) tenants shall be entitled to one (1) representative."

We must consider the effect of our decision in other areas. The New York City Housing Authority, for example, operates 188 housing projects, housing approximately 600,000 persons in 155,610 apartments. A full adversary hearing in such a situation with all attendant procedures would present the most serious difficulties. The virtual impossibility of setting up an equitable scheme for the representation of 155,000 tenant families in New York is apparent. Even if a scheme could be devised to assure adequate representation for the diverse interests of tenants situated in differing complexes and having different problems, the large number of representatives required would make a single hearing unmanageable. The selection of representatives for 600,000 people would alone require an operation of approximately the same magnitude as the election of the legislature in about a dozen of the states of the United States.

C. Type of procedure necessary to protect the tenants' interests

We disagree with the finding of the district court that a full adversary hear-

ing is so necessary to the protection of the interests of the tenants as to justify the grave administrative burdens which such a hearing would impose.

The questions involved in a rent increase do not turn on the resolution of specific factual issues on which the tenants as a group would have any special knowledge. The decision to raise rents requires rather the evaluation of complex financial data.[3] The rise in utility costs which occasioned the service charge in the present case must be evaluated within the context of the Authority's overall financial condition, the intricacies of project management, the possibilities of savings in some types of operations, and a hundred other intricate details.

In McKinney v. Walter E. Washington, 143 U.S.App.D.C. 4, 442 F.2d 726, 727 (1970) the court said:

> "The financing of a low-rent housing program, which sometimes necessitates the raising of rents, is a very complicated operation requiring a high degree of expertise. It is quite unlikely that courts, to say nothing of tenants, would possess the necessary expertise. In many cases it is only too probable that participation by tenants in rental decisions and review by the courts would cause senseless and damaging delays."

In a situation in which the individual rights of the tenant are directly affected, see Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (termination of welfare benefits) a trial type of hearing is required and the opportunity to present oral evidence serves a real function. However, in a situation such as the instant case, we agree with the district court

in Geneva Towers Tenants Organization et al. v. Federated Mortgage Investors et al. (N.D.Calif. January 8, 1972), that:

> "[T]he opportunity to present oral evidence is not particularly valuable where technical financial data is at issue. The 'credibility' of conflicting data is not best resolved by evaluating the demeanor of witnesses; it is best resolved by independent agency investigation . . ."

While this court in Langevin v. Chenango Court, Inc., 447 F.2d 296 (2d Cir. 1971), said, in passing, that a hearing would be required in a situation in which the landlord is a governmental body, Judge Friendly noted that "Whether the 'hearing' need always be the traditional 'trial-type' is another matter." We agree with the statement of appellee that

> ". . . the import of Langevin is that decent, safe and adequate low-rent public housing at rents low income tenants can afford is an interest of the nature which merits due process protection. The question then becomes the type of procedures required by the due process clause in the light of the severity of the private interest, the procedures necessary to protect that interest and the administrative burden."

### III.

Balancing the interests of the Authority in a summary procedure against the interests of the tenants and the type of procedure necessary to protect these interests, we hold that due process does not require an adversary hearing before a general rent increase or service charge can be imposed. See Hahn v. Gottlieb, 430 F.2d 1243 (1st

---

3. "Adjudicatory hearings serve an important function when the agency bases its decision on the peculiar situation of individual parties who know more about this than anyone else. But when, as here, a new policy is based upon the general characteristics of an industry, rational decision is not furthered by re-

quiring the agency to lose itself in an excursion into detail that too often obscures fundamental issues rather than clarifies them."
WBEN, Inc. v. United States, 396 F.2d 601, 618 (2d Cir.), cert. denied sub nom. Kings Garden Inc. v. FCC, 393 U.S. 914, 89 S.Ct. 238, 21 L.Ed.2d 200 (1968).

Cir. 1970).[4] We feel that the interests of the tenants, while concededly important, can be protected through a less formal procedure.

Notice of a proposed increase in rent shall be served well in advance of the date for the increase. Opportunity for filing written objections shall be given. There need be no opportunity for oral presentation. The tenants or their representatives shall have the right to submit any material they consider relevant to disprove the need for the rent increase. Finally, the Review Board upon reaching a decision shall issue a statement outlining the reasons for either approving or rejecting the requested rent increase. The tenants may of course be represented by counsel.

Modified and, as modified, affirmed.

---

4. In Geneva Towers Tenants Organization et al. v. Federated Mortgage Investors, et al. (N.D.Calif. January 8, 1972) a district court set up much the same procedure in a similar situation.

"While the court concludes that due process does not require a formal hearing with its concomitant panoply of procedures, problems, and costs, there are other procedures available to safeguard tenants' rights . . . The court therefore concludes that due process requires that tenants be given notice of their lessor's application for approval of rent increases; that tenants have a reasonable opportunity to make written objections thereto; and that tenants be furnished with a concise statement of FHA's reasons for approving an increase."