Salvatore T. De Matteo, J.
This action is a joint trial of four holdover summary proceedings. The petitioner in each instance is the State of New York. The object of the proceedings is to remove respondents from their respective apartments at premises 440 Lenox Road, Brooklyn, New York.
The instant situation, in effect, represents oñe of the major problems confronting a sovereign in attempting to maintain the continuous operation of a public hospital, namely, the Downstate Medical Center.
After an exhaustive search of the law the court genuinely suggests it may be one of prime impression.
On August 30, 1968 the Commissioner of Education, pursuant to section 307 of the Education Law, acquired title in the name of the State of New York to the subject apartment building directly across the street from the hospital center. The sole object of said condemnation was to acquire housing for nursing personnel employed at the hospital.
It appears that prior to admitting patients the hospital center must hire three shifts of nurses to be employed through *822 the night, and because of such late working hours, they require for both the need of personal safety and convenience as it exists in the surrounding neighborhood, living quarters adjacent to the hospital.
There are 108 apartments in the subject premises of which 14 are still occupied by persons whose occupancy predates the State’s “ takeover ” in 1968. Holdover proceedings have been commenced against only 7 of the 14 tenants. From the inception petitioner has offered, and continues to offer payment of moving, packing, and unpacking expenses of respondents. Former tenants who vacated prior to April 1, 1973 received in addition $1,500, said sum being offered to all tenants at the time. Petitioner made prior offers by phone calls and circulating teams of assistants on the premises to assist tenants in relocating. Petitioner’s efforts in providing relocation to former tenants, who have since vacated, have been unquestionably overwhelmingly successful. The above offers of aid have been rejected by respondents. Petitioner’s offer to help respondents relocate remains available.
In or about December of 1972 and January of 1973, respondents were duly served with a 10-day notice to quit said premises (Education Law, § 307, subd. 11), and, after failing to vacate same, these proceedings were commenced some eight to nine months later. Mr. George D. Peters, director of housing for petitioner, had testified during the course of these proceedings as to the hospital’s crisis in hiring nursing personnel due to a critical shortage of apartments near the hospital. He cited an instance wherein only a single one-bedroom apartment was available as against nine nurses on its waiting list. His testimony remained uncontroverted.
Admittedly, petitioner has not provided respondents with any preliminary hearing. Hence, respondents now contend that State action herein is arbitrary and capricious being in violation of the concept of due process as it was pronounced by our Court of Appeals in Matter of Fuller v. Urstadt (28 N Y 2d 315).
Due to the ever-increasing role of State omnipresence with the lives of our citizens, it is inevitable that Fuller (supra), a 4:3 opinion, will spawn a spate of decisions concerning the quantum of due process to be accorded persons even remotely affected by its action. The court has expressed itself at length herein to show respondents were not denied due process of the law as guaranteed by the Constitution’s Fourteenth Amendment.
The principle expounded in Fuller, a relatively recent case, antedates Magna Carta. Lest it forgets, the State is reminded *823 it is the benevolence of its subjects that empowers it to act. Thus, when State involvement dominates, it will not be permitted to overrun and subjugate its creator in frankenstein fashion. Before it can act detrimentally to persons directly affected, the State must first invite them to 1 ‘ talk things over ’ ’, as it were, within a manner satisfying constitutional due process.
Courts have and continue to disagree as to the requirements of minimal due process under the Fourteenth Amendment within a given situation. Some have held a full adversary hearing is a necessary prerequisite. (See Williams v. White Plains Housing Auth., 35 A D 2d 965; Goldberg v. Kelly, 397 U. S. 254; Matter of Vinson v. Greenburgh Housing Auth., 29 A D 2d 338, affd. 27 N Y 2d 675.) Others have held the submission of relevant material to a review board without oral argument suffices. (Burr v. New Rochelle Mun. Housing Auth., 479 F. 2d 1165.) In one instance the New York Court of Appeals had the opportunity to determine whether the issue of a readable transcribed record was a necessary element of due process (Wallace v. Murphy, 21 N Y 2d 433, 437), and there are cases where an administrative agency has rendered a determination without a stenographic record, relying upon other sources to make an informed decision (Matter of Taub v. Pirnie, 3 N Y 2d 188; Patton v. Sugarman, N. Y. L. J., Nov. 30,1973, p. 16, col. 2).
In the Fuller case (28 N Y 2d 315, supra), it appeared a cursory hearing would suffice on the limited issue of “ arbitrariness ”. Also, to avoid time-consuming delays, courts have by-passed the " preliminary hearing ’ ’ concept, and have held the trial of the action itself suffices the opportunity of providing a proper forum to meet the adequacy of a minimal standard prescribed by due process. (Matter of Sherman v. Kopach, 75 Misc 2d 18; Tompkins Sq. Neighbors v. Zaragoza, 43 A D 2d 551.)
Hence, courts will enjoin State action which directly or indirectly deprives tenants of their right to remain in continued occupancy without being accorded the minimal guarantees of due process under the Fourteenth Amendment.
Query: Are the facts in the instant case independent, and if so, inapplicable to the rule laid down in Fuller %
This court answers in the affirmative. Fuller is not violated wherein the State, acting under the power of eminent domain as enacted in our Condemnation Law, acquires private housing to assist in meeting the critical needs of a public hospital in attracting nursing personnel.
Fuller declares State action, without explanation, is arbitrary and capricious wherein it seeks to cancel several leases and not *824 others. In the instant proceedings, all apartments become occupied by nurses as they are made available by attrition. It is significant to note at this posture, that with the exception of respondents and a few others, all of the original tenants have removed without court action on the terms the State has offered to all occupants.
Moreover, in Fuller, tenants reasonably anticipated renewing their leases, but in the proceedings at bar, tenants could not reasonably expect to remain indefinitely, being fully apprised, removal by attrition must occur as the necessity for nursing quarters arise. Additionally, in Fuller the State housed the tenants, but here the State must de-house them!
The Condemnation Law of this State provides notice to the “ owner ” only of private property taken for a public purpose. (Condemnation Law, § 5.)
Verily, the Downstate Medical Center is a vital “medical mecca ” teeming with interminable scores of the sick, sore, and disabled seeking treatment and rehabilitation; and wherein “ lifesaving ” functions are laboring tirelessly day in and day out without cessation. There can be no tenable challenge available against the validity of such a ‘ ‘ taking ’ ’ for a public use.
However, the statute omits a provision of notice or hearing to the tenants such as respondents who are similarly situated. Parenthetically, the Legislature manifestly intended to obviate this procedural necessity in expediting the condemnatory transition.
It is hornbook law that the State Condemnation Law as now written has constitutional validity. It is not for the courts to amend the procedure as enacted by the State, enabling tenants to be entitled to due process at any stage of condemnation. This court does not sit as a legislative body! (Seagram & Sons v. Hostetter, 45 Misc 2d 956.) Nor are respondents now permitted to collaterally attack the constitutional validity of the Condemnation Law and the subsequent action of the State Commissioner of Education in the instant proceedings. That is not to say respondents’ contention would not be upheld were the facts, for instance, that petitioner had voluntarily closed its doors and the need for housing nurses was rendered moot. In such a situation, enjoining the State from removing respondents would appear to be warranted.
However, the choice of measures is for the Legislature. It is presumed to have investigated a subject and to have acted with reason and not from caprice. Legislation, passed in the exercise of a police power must be reasonable in the sense that *825 it must be based upon reason as distinct from being wholly arbitrary and capricious; but, when the Legislature has power to legislate on a subject, the courts may only look into its enactment, far enough to see whether it is adapted to the end intended. If it is, the courts must give it effect no matter how unwise they may regard it, or how much they might, if given the choice, prefer other more fit or appropriate measures. (People v. Griswold, 213 N. Y. 92, 97.)
The only remaining contention of respondents concerns the question of whether the State waived its right to pursue summary proceedings herein by virtue of the fact they were commenced some eight to nine months after serving respondents with notices to quit. Petitioner’s unabated largesse failed to “thaw” respondents’ intransigence. So long as the need to fulfill the public purpose persisted there was insinuated in the condemnatory acquisition the lack of any authority in the State’s representatives tó waive the effective use of its only judicial weapon against respondents — -that of summary proceedings. Hence, against the factual background herein, respondents cannot utilize these proceedings to thwart a valid public purpose.
Accordingly, judgment is rendered in favor of petitioner together with issuance of warrant stayed to and including April 30, 1974 pursuant to section 753 of the Real Property Actions and Proceedings Law. Said stay is conditioned only upon respondent’s paying petitioner any and all arrears for use and occupancy, within 15 days from date hereof, at the rate payable as rent prior tó the commencement of these proceedings, and thereafter, continue to pay petitioner for use and occupancy, at a like rate, within five days after same becomes due.