Irving B. Kendall, J.
On June 5, 1974 the Mount Ver-, non Housing Authority, petitioner landlord in this eviction proceeding, hereinafter referred to as the “ authority ”, served the respondent tenant, Edna McCoy, hereinafter referred to as the lt tenant ”, with a form letter signed by its chairman, advising the tenant that they were “ contemplating ” an increase in her rent, effective August 1,1974.
At the bottom left-hand corner of the form letter appeared a proposed new rent of $179 per month for the tenant’s four- and one-half room apartment. The current rent was $162 per month.
The June 5 letter, a copy of which is attached hereto and made a part of this decision, asserted that the authority had been able to avoid a rent increase for seven years but could “ no longer hold the line ” by reason of a dramatic increase in operating expenses, especially fuel, electricity, gas, and maintenance costs due to vandalism.
. The letter continued that the authority members were certain that the tenants would not want “ necessary services dimin *473 ished ” and added that the members of the authority would be “ happy ” to consider the tenants’ written “ comments ” at any time prior to June 19,1974.
The letter concluded with the advice that the tenant had the right to be represented ‘ ‘ by Counsel in the preparation of any such written comments.”
The tenant herein did not respond to that letter. Nor did she respond to a follow-up form letter dated June 27,1974 in which the authority advised her that she had been given an opportunity to comment “ or object ” to the proposed increase.
The June 27 letter, a copy of which is attached hereto and made a part of this decision, was signed by the project manager and stated that the comments and “ objections ” received by the authority have all been carefully reviewed and considered but that by reason of the “ dire financial needs of the Authority to continue to maintain the required services on behalf of all tenants ”, there was no alternative but to increase rents “ as previously indicated. ”
The June 27 letter concluded with a statement that the Authority “ hereby elects to terminate your present tenancy * * # effective July 31, 1974 ” and with a direction to the tenant to sign an endorsement to her present lease, effective August 1, 1974, or “ the landlord will institute provision to remove you. *7
At the foot of the letter received by the tenant was the notation “ Your rent will be $179.00 per month.” (Emphasis by this court.)
The tenant did not respond to the June 27 letter and continued paying $162 a month for her apartment in July.
"When she tendered the authority the same amount for the month of August, 1974,. the authority refused to accept the $162 and thereafter commenced this holdover proceeding to evict Mrs. McCoy.
Both parties to this summary proceeding have submitted to this court an agreed statement of facts as authorized by CPLR 3222, the original of which was filed with this court on September 30, 1974 and which with the original notice of petition and petition as well as the exhibits attached thereto have been reviewed by this court in arriving at our decision herein.
The following is a statement of facts upon which this controversy depends:
(1) That petitioner is a public housing authority of the State of New York and is. the owner and landlord of premises known as Levister Towers of which No. 215 South Ninth Avenue, Mount Vernon, New York, is one building.
*474 (2) That respondent is the tenant of Apartrhent 4-E in said building, having entered in possession thereof in October, 1950 and executed a written rental agreement on or about the 3rd day of May, 1954.
(3) That the rental for the period commencing on the 1st day of July, 1974, and ending on the 31st day of July, 1974, was in the amount of $162 payable on the first day thereof.
(4) That on or about June 5, 1974, petitioner delivered a notice to respondent, a copy of which is annexed hereto.
(5) That there was no response thereto by respondent.
(6) That on the 27th day of June, 1974, petitioner at a regular meeting adopted a resolution to increase rents of its entire premises pursuant to a rent schedule providing that, with respect to nonwelfare tenants in occupancy as of July 31, 1974, no increase will be more than 25% above the then present rent, no such tenant will be increased to more than 25% of his income and there will be no decrease in the then present rent for any such tenant.
(7) That on the 28th day of June, 1974 a duly authorized agent of the Housing Management Bureau of the Division of Housing and Community Renewal of the Executive Department of the State of New York gave oral approval to increase rents of nonwelfare tenants in accordance with the aforesaid schedule to a duly authorized agent of petitioner, which was reaffirmed in writing and which approval was required to be given by the commissioner pursuant to section 401 (b) of the contract dated J anuary 28,1944.
(8) That the budget of petitioner for the fiscal year commencing April 1, 1974 and ending March 31, 1975 projects a deficit of $132,246.23.
(9) That on June 29, 1974 petitioner mailed a notice dated June 27, 1974 to respondent, a copy of which is annexed hereto.
(10) That there was no response thereto by respondent.
(11) That the apartment sought to be recovered by petitioner is the residence of respondent.
(12) That on or about the 2nd day of August, 1974 respondent made tender of the sum of $162 instead of $179 as and for rent for said apartment for the month of August, 1974 which tender was refused by petitioner.
(13) That the schedule of rents for welfare tenants authorizes petitioner to charge $113 for apartments comparable to that occupied by respondent in said premises.
(14) That respondent is a nonwelfare tenant.
*475 (15) That the reffi sought to be charged respondent pursuant to the aforesaid notices dated June 5 and June 27, 1974 in the amount of $179 is higher than that 1 ,'ing charged welfare tenants for a similar apartment in said premises.
The controversy submitted for decision was whether or not upon the foregoing facts the petitioner is entitled to a final judgment awarding it possession of the apartment occupied by respondent.
It was stipulated that, in the event petitioner prevails upon these proceedings, it will accept the aforesaid increased rent from respondent who shall pay same promptly and, upon receiving same, petitioner shall continue respondent as a tenant in said apartment.
The parties also agreed that the court shall render such judgment as shall be proper upon the above facts but the same shall be without costs, including late charges, dispossess notice charge and/or miscellaneous charges, interest or attorney’s fees.
The tenant does not challenge the authority’s power to increase rents nor does she claim that the proposed new rent was not approved by the State Division of Housing.
The thrust of her defense is that she was denied due process of law in violation of her Fourteenth Amendment constitutional rights because the June 5 letter to her (and to other tenants) did not allow sufficient time to respond since it had to be answered before June 19, nor did the letter adequately apprisé' her of her right to file written “ objections ”, as distinguished from “ comments ”, nor did it advise her of her right to representation by other than counsel.
The tenant contends that certain procedural guidelines for the increase of rents in public housing projects mandated in the leading case of Burr v. New Rochelle Municipal Housing Auth. (479 F. 2d 1165), decided on May 25, 1973 in the United States Circuit Court of Appeals, were not followed by the Mount Vernon Housing Authority.
In addition to this equitable defense, the tenant has asserted a legal one, namely that the June 27 notice allegedly terminating her lease effective July 31,1974 unless she signed for the increase in rent, was neither timely nor definite nor unequivocal, as required by law.
The authority contends that the word ‘ ‘ .comments ’ ’ embraces “ objections ” and that it gave the tenant sufficient notice of its intention to raise rents as well as a reasonable opportunity to make written objections thereto as well as the right to retain counsel.
*476 Since the tenant has stipulated that for the purposes of this proceeding she will not contest the authority’s right to increase rents and will not claim that the proposed increase was not approved by the State Commissioner of Housing, the only issues before this court relate to the equitable and the legal defenses asserted by the tenant.
There appear to be two questions for determination by this court.
(1) Did the Mount Vernon Housing Authority follow the procedural due process guidelines for increasing rents in public housing projects mandated in the Burr case?
(2) Did the June 27,1974 notice which purported to terminate the tenancy of the tenant comply with section 232-b of the Real Property Law; in other words, did the June 27 notice give the tenant timely, definite and unequivocal notice of the termination of her tenancy?
Both questions are answered in the negative.
The law is well settled that an equitable defense may be interposed in summary proceedings, whether brought for nonpayment of rent or against a holdover. (Real Property Actions and Proceedings. Law, § 743; Mico Mgt. Corp. v. Scaraggi, 59 Misc 2d 984; Great Park Corp. v. Goldberger, 41 Misc 2d 988, 989; Markese v. Cooper, 70 Misc 2d 478; see, also, Matter of Sherman v. Kopach, 75 Misc 2d 18.)
The equitable defense asserted herein is that the guidelines mandated by the United States Circuit Court of Appeals in Burr v. New Rochelle Municipal Housing Auth. were not followed by the Mount Vernon Housing Authority.
These were the guidelines and these are the findings of this court (Burr v. New Rochelle Municipal Housing Authority, supra, p. 1170).
(1) “ Notice of a proposed increase in rent shall he served well in advance of the date for the increase.”
This court finds that the Mount Vernon Housing Authority , followed this guideline but only as to the date the proposed increase would take effect, but gave the tenant insufficient time to reply when it imposed a June 18 deadline for “ comments ” about a rent increase they were “ contemplating ”.
(2) “ Opportunity for filing written objections shall be given. There need be no opportunity for oral presentation.”
This court finds that the June 5 notice was equivocal and did not clearly advise the tenants in the project that they could file “ objections ” as distinguished from comments. The court notes that the authority did use the word “ objections ” for *477 the first time in its June 27 follow-up letter where it warned the tenant to sign or be evicted.
3. u The tenants or their representatives shall have the right to submit any material they consider relevant to disprove the need for the rent increase. ’ ’
This court finds that the June 5 notice does not comply with this guideline at all.
4. “ Finally, the Review Board upon reaching a decision shall issue a statement outlining the reasons for either approving or rejecting the rent increase. The tenants may of course be represented by counsel.”
This court finds no evidence that a review board was set up by the Mount Vernon Housing Authority to hear and determine the question of increasing rents and no evidence that the statement required by the guidelines was issued to the tenant.
This court does find that the June 27 letter to the tenant advised her that the comments and objections received by the authority had been carefully reviewed and considered.
Significantly, the June 27 letter was not signed by the authority’s chairman but by the project manager.
This court also finds, and this is to the credit of the authority, that in its June 5 letter it did advise the tenant of her right to be represented by counsel although this right seems to have been limited to the right to be represented by counsel only in the preparation of written comments.
In connection with tenant’s legal defense that the notice terminating her tenancy failed to comply with the provisions of section 232-b of the Real Property Law, this defense has been sustained.
The June 27 notice terminating the tenant’s tenancy was timely for it gave a termination date of July 31, but it was indefinite and equivocal on its face.
It failed to direct the tenant to surrender the premises on July 31, 1974. It failed to advise the tenant that if she did not sign for the increase in rent an action would be commenced on and after August 1, 1974 to evict her for holding over without the permission of her landlord.
The warning language used by the authority in its June 27 letter “ If an endorsement is not signed, the landlord will institute provision to remove you ”, is equivocal. (Emphasis by the court.)
What did the word “ provision ” mean and what deadline date was the tenant given to sign the endorsement other than *478 the advice that she call at the project office “ immediately, between the hours of 1 p.m. to 5 p.m. to sign the endorsement.”
In arriving at its decision in this case the court has read the authorities cited by the learned attorneys for the authority and for the tenant.
The decision of this court should not be interpreted as a finding that tenants living in the Levister Towers Project are immune from paying increased rents based upon obvious increased costs of operations and maintenance, nor that the 497 families who dwell in the project are privileged members of our community. They are neither immune nor privileged.
To the contrary, every single tenant in Levister Towers lives under the gun of a non-rent-controlled month-to-month lease terminable on 30 days’ notice by the authority.
As so eloquently put by New York Supreme Court Justice John C. Mabbach in Matter of Williams v. White Plains Mousing Auth. (62 Misc 2d 613, 618): “ A low income housing tenant who is evicted is condemned to suffer a grievous loss (see Anti-Fascist Comm. v. McGrath, 341 U. S. 123, 168 [1951]). The plight of the poor in securing adequate housing is well known in our State and Nation. Housing, like food and clothing, is one of the essentials of human existence. The government has recognized that important public policy interests are promoted by low rent public housing (N. Y. Const., art. XVIII). This honors our Nation’s commitment to foster the dignity and well being of all its citizens. Public Housing Authorities are set up with this purpose in mind. The respondent in this case has been a leader in fostering the well-being of the poor in its city. This court simply believes that the regulations set down by the State do not go far enough to protect such an important societal interest which the State itself has established. The stakes are too high for the low income housing tenant to allow termination of tenancy without giving the tenant a chance, if tenant so desires, to be fully informed of the case against him in order that the tenant may contest its basis and produce evidence in rebuttal ”.
And, as stated by Appellate Division Justice James D. Hopkins in his landmark opinion in Matter of Vinson v. Greenburgh Mousing Auth. (29 A D 2d 338, 340-341):
“ Our State has distinguished low-rent housing as a human need to be satisfied through governmental action and has created by specific statutory provisions the structure of the relationship between the housing authority and the tenant. The statute consequently enters into and becomes a part of the lease; and *479 its spirit and intent must be the guiding 'beacon in the interpretation of the terms *of the lease.
“ ‘ “ Due process of law, ’ ’ is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty, or property, whether the proceeding be judicial, administrative, or executive in its nature ’ (Stuart v. Palmer, 74 N. Y. 183, 190-191). Once the State embarks into the area of housing as a function of government, necessarily that function, like other governmental functions, is subject to the constitutional commands. Low-rent housing is not the leasing of government-owned property originally acquired for a different purpose, but now surplus or not required for that purpose, on a sporadic or temporary basis (cf. United States v. Blumenthal, 315 F. 2d 351), where the traditional notions of private property might well be applied; rather, it imports a status of a continuous character, based on the need of the tenants for decent housing at a cost proportionate to their income, subject to the compliance by the tenants with reasonable regulations and the payment of rent when due. ‘ The government as landlord is still the government. It must not act arbitrarily, for, unlike private landlords, it is subject to the requirements of due process of law.’ (Rudder v. United States, 226 F. 2d 51, 53).”
Our courts have held that there is no constitutional right to continue living in a public housing project. (See Chicago Housing Auth. v. Blackman, 4 Ill. 2d 319; Municipal Housing Auth. v. Walck, 277 App. Div. 791; cf. Lynch v. United States, 292 U. S. 571, 577; Escalara v. New York City Housing Auth., 425 F. 2d 853, 861.)
But our courts have also held that the government cannot deprive a public housing tenant of his continued tenancy without affording him adequate procedural safeguards. (See Escalara v. New York City Housing Auth., supra; Matter of Vinson v. Greenburgh Housing Auth., 29 A D 2d 338.)
This court knows of no better way to generate the feeling that justice has been done than to give a person, rich or poor, prince or pauper, who is in jeopardy of serious loss, whether of life, liberty or property, notice of the case against him and an opportunity to meet it.
The Mount Vernon Housing Authority had honorable intentions but in the preparation of its June 5 and June 27 notices it failed to give proper notice to the respondent-tenant.
Accordingly, the petition is dismissed, without costs or fees, and without prejudice to reinstate the same after a proper constitutional foundation has been laid.