Mary OWENS et al.

v.

**HOUSING AUTHORITY OF the CITY OF STAMFORD et al.**

Civ. No. B 74–432.

United States District Court,
D. Connecticut.

May 29, 1975.

Diana A. Johnston, Stamford, Conn., Fairfield County Legal Services, Inc., David S. Branch, Bridgeport, Conn., for plaintiffs.

Edward M. Kweskin, Wosey, Rosen, Kweskin & Kuriansky, Emil H. Frankel, Stamford, Conn., for defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS

ZAMPANO, District Judge.

This case poses difficult problems in federal-state relations engendered by the ever-widening scope of the doctrines enunciated in Younger v. Harris, 401 U. S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). It also requires the Court to assess tenants' rights and Housing Authority responsibilities in light of the developing case law since Escalera v. New York City Housing Authority, 425 F.2d 853 (2 Cir.), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970).

### I.

In their complaint for declaratory and injunctive relief and damages, the plaintiffs, tenants in low and moderate income public housing in the City of Stamford, Connecticut, level broad attacks upon various practices of the Stamford Housing Authority (hereinafter "SHA"). The complaint is a lengthy, 34 page document with causes of action set forth in six counts. Count One states that the "no eviction" policy of the SHA was unilaterally changed on September 1, 1974, without notice to the tenants or an opportunity to be heard. This policy encouraged tenants to pay rent arrearages in installments and to "settle" their rent debts without actual physical eviction. With the change in policy, which the plaintiffs contend violated the Due Process Clause, there has been a dramatic increase in evictions. Count Two alleges that due process has been denied moderate income housing tenants by the failure to provide administrative hearings before assessments of "additional rent" charges and before eviction proceedings. Counts Three and Four are addressed to the leases signed by the low income housing tenants which are claimed to be violative of the regulations promulgated by the Department of Housing and Urban Development (hereinafter "HUD") and of the statutory requirement of 42 U.S.C. § 1402(1), which proscribes a rent in excess of 25% of a tenant's family income. Count Five concerns itself with tenants who contend they have been evicted as a result of the aforesaid illegal activities of the SHA. Count Six merely realleges several of the preceding causes of action as a basis for redress in the form of an immediate injunction.

### II.

When suit was commenced before this Court on November 27, 1974, the plaintiffs moved for a temporary restraining order to enjoin any further evictions of the named plaintiffs and the members of the classes they represented. At that time the Court decided to stay its hand in order to grant the defendants an opportunity to file a motion to dismiss, and to permit the state court to entertain the plaintiffs' grievances in pending actions. It was agreed, however, that the federal forum would remain open for redress if the plaintiffs were not afforded a full and adequate opportunity to litigate their claims and defenses in the state court.

Thereafter the actions against plaintiffs Owens and Zygmont were pressed in the state court and the defendants successfully obtained orders of eviction. In the *Owens* case, the state judge viewed the issue as a "narrow" one involving nonpayment of rent and suggested that remedies against "the Housing Authority because its [sic] a governmental based operation" must be obtained "somewhere else" and "in some other forum." Tr. p. 7, Housing Authority v. Owens, No. CVI–7410–40,524 (Stamford Cir. Ct. December 9, 1974). In the *Zygmont* case, the state judge reviewed the proffered constitutional defenses but rejected them on the grounds

that the activities of the SHA did not constitute state action and that the principles enunciated in Escalera v. New York City Housing Authority, supra, were not applicable to Connecticut's summary process procedures. Housing Authority v. Zygmont, No. CVI–7411–40,–769 (Stamford Cir. Ct. March 26, 1975). The record further discloses that plaintiffs Owens and Zygmont attempted to appeal the judgments of the state judges but that their appeals were not perfected because they were financially unable to post the appeal bonds as required by Conn.Gen.Stat. § 52–542. The plaintiffs' requests for waivers of the requirement to post the bonds were denied by the state judges.

The plaintiffs now seek to reactivate this lawsuit and the defendants counter by moving to dismiss pursuant to Rule 12(b), F.R.Civ.P.

◼ At the outset it is noted that jurisdiction over this civil rights action is properly premised on 28 U.S.C. §§ 1331(a), 1343(3). Escalera v. New York City Housing Authority, supra; Caulder v. Durham Housing Authority, 433 F.2d 998, 1001 (4 Cir. 1970); Barber v. White, 351 F.Supp. 1091, 1093 (D.Conn.1972); McMichael v. Chester Housing Authority, 325 F.Supp. 147, 148 (E.D.Pa.1971). Since defendants have filed a series of affidavits challenging many of the plaintiffs' factual allegations, it is also appropriate to review certain relevant principles which are applicable to defendants' motion. In considering a motion to dismiss, all facts well pleaded in the complaint must be accepted as true, California Motor Transport Co. v. Trucking, Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), and no action, especially one under the Civil Rights Act, should be dismissed unless it appears to a certainty that plaintiffs are entitled to no relief under any state of the facts which could be proved in support of their claims. Escalera v. New York City Housing Authority, supra, 425 F.2d at 857; see

Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### III.

◼ Relying on Younger v. Harris, supra, and its progeny, the defendants first contend that consideration of equity, comity and federalism require this Court to dismiss the complaint, or to abstain from decision in order to afford the Connecticut courts an opportunity to rule on the constitutional and statutory issues in cases presently pending in state forums.

In the *Younger* sextet, the Supreme Court ruled that federal courts were precluded from intervention by way of injunctive or declaratory relief in any pending state criminal prosecution, except in special and extraordinary circumstances. 401 U.S. at 45, 46, 91 S.Ct. 746, 27 L.Ed.2d 669. See Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Byrne v. Karalexsis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971). While the principles enunciated in *Younger* have recently been held to apply to federal court interference in state civil proceedings which seek to protect "the very interests which underlie its criminal laws," Huffman v. Pursue, Ltd., —— U.S. ——, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the Supreme Court has made "no general pronouncements upon the applicability of *Younger* to all civil litigation." *Id.* at 1209 of 95 S.Ct.

However, even assuming the applicability of *Younger* principles to such civil litigation as state summary process, federal intervention is appropriate under the circumstances of this case. First, despite this Court's reluctance to take action when the case was initially instituted and the referral of the issues back to the state courts, the plaintiffs were

effectively blocked from fully litigating the federal and statutory questions. As set forth previously, plaintiff Owens was instructed to seek her remedies "in some other forum" and to "find yourself another defense until you hear from Judge Zampano." In addition, plaintiffs Owens and Zygmont were denied discovery procedures that they needed in order to raise properly many of their claims relating to the activities of the SHA. More important, the plaintiffs were unable to challenge the lower state courts' decisions by appealing to the Connecticut Supreme Court. Connecticut statutes do not provide for the waiver of an appeal bond in a summary process case, Conn.Gen.Stat. § 52-542, and plaintiff Zygmont's application to the state judge for a waiver was denied. The unavailability of appellate review is particularly significant since the Connecticut Supreme Court has yet to rule on the propriety of federal constitutional defenses to a summary process action for eviction. Cf. Huffman v. Pursue, Ltd., supra at ——, 95 S.Ct. 1200, 43 L.Ed.2d 482. Thus, as was noted in Caulder v. Durham Housing Authority, supra, 433 F.2d at 1002, the inability to post an appeal bond in a state eviction case renders the ability to litigate the issues in the state court "more theoretical than real."

Second, the primary issues before the Court concern federal law, not state law. The plaintiffs' main complaints focus on administrative actions by the SHA which allegedly violated their rights under the Constitution and HUD regulations. As Judge Smith noted in *Escalera*, rejecting an argument for abstention in circumstances similar to those present at bar:

> We are not dealing here with the administration of a complex state process in which state courts have greater expertise. The actions here are not entangled in state law. Rather, the only issues here are whether certain HA procedures pass muster under the due process clause of the Fourteenth Amendment to the Federal Constitution. Federal courts are fully competent to consider such issues and are the primary forum for vindicating federal rights. 425 F.2d at 865.

Thus, the considerations of comity and federalism which required abstention in *Younger* and *Huffman* are absent in the instant case.

Third, equitable factors weigh heavily in favor of exercising federal jurisdiction. With impending eviction from their homes almost a certainty, the plaintiffs' harm is great and immediate; with low rent public housing as scarce as it is, the injury suffered by eviction is irreparable.

Finally, considerations of judicial economy must be placed on the scale. It seems obvious that abstention would deluge the state courts with constitutional defenses to the numerous summary process actions instituted monthly by the SHA. These federal questions cannot be resolved effectively or efficiently in multiple cases before different state judges. Conflicting state court opinions are inevitable. Compare Housing Authority v. Zygmont, supra, with Housing Authority v. Bell, No. CV6-696-41600 (Conn. Cir. Ct. November 3, 1969). On the other hand, by granting plaintiffs and the class they represent a federal forum to litigate the merits of their constitutional claims, the Court can avoid duplicative legal proceedings in each of the SHA's summary process cases.

## IV.

■ The defendants next submit that the action should be dismissed for failure to exhaust available administrative remedies. It may be assumed that the exhaustion doctrine applies to claims premised on 42 U.S.C. § 1983, see Plano v. Baker, 504 F.2d 595 (2 Cir. 1974); Blanton v. State University of New York, 489 F.2d 377 (2 Cir. 1973); Eisen v. Eastman, 421 F.2d 560 (2 Cir. 1969), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970). Nevertheless, the plaintiffs contend that no administrative

remedies are available which provide a lawful, realistic method for them to air their grievances. Since this is a claim central to the plaintiffs' complaint, any questions of fact raised by this aspect of the defense cannot be resolved on a motion to dismiss.

## V.

■ Finally, defendants argue that each of the causes of action set forth in the complaint fails to state a claim upon which relief may be granted.

With respect to Count One, the defendants claim that the tenants were not entitled to due process procedures before the SHA changed its "no evictions" policy in September, 1974. The Court disagrees. In Burr v. New Rochelle Municipal Housing Authority, 479 F.2d 1165 (2 Cir. 1973), the Second Circuit held that at a minimum due process required certain administrative proceedings prior to a general rent increase or imposition of service charges in low rent public housing. In determining that the tenants had a protected interest at stake in a project-wide rent increase, the Second Circuit focused on the impact the new charges had on tenants' budgets. The interests of the tenants here are of even greater magnitude. If, as plaintiffs allege, the SHA had a policy not to evict tenants, and tenants relied on the informal settlement procedures long in existence, then a change in that policy without notice or hearing leaves the tenants in the position of either paying all the rent arrearages immediately or being evicted. The effect on the tenants' budgets is obvious. While ordinarily tenants have no interest in a leasehold if the rent is not paid, a housing authority cannot unilaterally discontinue a policy upon which tenants have acted in reliance on for a period of years, particularly when decent, safe and adequate low rent housing is not available. Cf. Burr v. New Rochelle Municipal Housing Authority, supra, 479 F.2d at 1169.

Further support for the plaintiffs' position is found in Caramico v. Secretary of HUD, 509 F.2d 694 (2 Cir. 1974),

wherein the Second Circuit noted that low income housing tenants had a "right not to be subject to treatment both 'covert and arbitrary,' and must be allowed to have an input into the decision to require eviction." Id. at 701. The Court, comparing the interest at stake in Caramico with the interest at stake in a rent-increase decision, stated:

> [O]f far greater moment than increase in rent is the loss of an abode, particularly—as Judge Dooling said—"in deteriorated, low-income neighborhoods where replacement quarters are not readily available at rents the occupiers can afford." Id.

The policy decision at issue in the instant matter impinges on no less a tenant's interest than that in Burr and Caramico. The SHA's change in policy has the direct and immediate effect of either producing a sudden increase in a tenant's budget or requiring the tenant to vacate and seek quarters elsewhere. Since SHA tenants have a protected interest at stake in the policy change, Count One sufficiently alleges facts upon which relief may be granted.

■ Defendants next attempt to dismiss from this case the tenants of moderate income apartments, attacking Count Two on two grounds: 1) the alleged lack of state action; and 2) the availability of state eviction proceedings which are claimed to afford these tenants all the safeguards mandated by due process.

Relying on McGuane v. Chenango Court, Inc., 431 F.2d 1189 (2 Cir. 1970), the defendants suggest that the SHA has two identities: a state body in regard to low income projects and a private apartment house owner with respect to its moderate income tenants. However, it seems clear that the actions of the SHA constitute state action as defined by the Second Circuit in such cases as Lopez v. Henry Phipps Plaza South, Inc., 498 F.2d 937, 942 (2 Cir. 1974), and Male v. Crossroad Associates, 469 F.2d 616 620–21 (2 Cir. 1972). The SHA was created pursuant to state statute, Conn. Gen.Stat. § 8–40, its moderate income

public housing was constructed with state assistance, Conn.Gen.Stat. § 8–70, and its operations and management are subject to supervision by the state public works commissioner, Conn.Gen.Stat. § 8–72. This amount of state regulation places the SHA closer to the government action end of the spectrum than to the private developer in *McGuane*. Cf. Lopez v. Henry Phipps Plaza South, Inc., supra, 498 F.2d at 942. Consequently, the activities of the SHA with respect to its moderate income tenants are governed by due process constraints.

■ The defendants further argue that, even granting the presence of state action, the tenants have an adequate opportunity to defend against the activities of the SHA in the state court action against them for nonpayment of rent. The short answer to this argument is that Connecticut's summary process procedures do not provide housing authority tenants with a full opportunity to litigate against their landlord. As has been noted, the availability of federal constitutional defenses in state summary process is limited, and the opportunity for appeal to the Connecticut Supreme Court is circumscribed. Under these circumstances, where the state summary process is inadequate to provide full due process protections, administrative hearings prior to the institution of eviction proceedings are required. Caulder v. Durham Housing Authority, supra; see Joy v. Daniels, 479 F.2d 1236 (4 Cir. 1973); Johnson v. Tamsberg, 430 F.2d 1125 (4 Cir. 1970).

■ Even assuming, however, that a plenary judicial hearing were available in state summary process, pre-eviction administrative proceedings would nevertheless be required. In Escalera v. New York City Housing Authority, supra, the Second Circuit determined that a housing authority must offer tenants administrative hearings with procedural safeguards prior to the institution of state eviction actions. Judge Smith specifically found unpersuasive the housing authority's argument that a tenant might

challenge additional rent charges by refusing to pay them and by defending in state court against the housing authority's suit for nonpayment of rent:

> The cost of defending in court and the hazards envisioned by a public housing tenant in refusing to pay rent, would probably dissuade all but the boldest tenant from contesting an "additional rent" charge in this manner. 425 F.2d at 864.

Thus, the fact that the SHA can enforce its decisions by recourse to the state summary process procedures is not an adequate substitute for "fair procedures in the decision of the HA in the first instance." *Escalera*, supra, 425 F.2d at 866. Administrative hearings afford tenants an informal and inexpensive forum in which to air their grievances. The availability of such a forum guarantees the tenants a meaningful opportunity to be heard before their leasehold is placed in jeopardy and their financial resources are subjected to extra burdens. Cf. Lamb v. Hamblin, 57 F.R.D. 58, 63 (D.Minn.1972). Since the complaint alleges that the SHA does not make such hearings available to its moderate income tenants, Count Two states a cause of action as to these tenants upon which relief may be granted.

■ Defendants next urge the Court to dismiss Count Three which states that the tenants of low income housing are protected by the so-called "Brooke Amendment," 42 U.S.C. § 1402(1), an enactment that seeks to prohibit the housing authority from charging these tenants rents in excess of 25% of their family incomes. Defendants assert that since the Brooke Amendment does not set forth a definition of "rent," it cannot furnish a basis for a claim upon which relief may be granted. The argument is without merit in view of Barber v. White, 351 F.Supp. 1091 (D.Conn. 1972).

■ Count Four is attacked on the ground that plaintiffs may not in this forum seek to enforce the holding of Housing Authority of Omaha v. Unit-

ed States Housing Authority, 468 F.2d 1 (8 Cir. 1972). However, it is evident that the defendants have misread the basis for the plaintiffs' claim in Count Four. That Count seeks redress for the SHA's failure to implement HUD regulations and, as such, clearly states a cause of action. See Thorpe v. Housing Authority, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); Glover v. Housing Authority of Bessemer, 444 F.2d 158 (5 Cir. 1971). The defendants' further defense to Count Four that the issues are moot because the SHA has adopted an interim grievance procedure in conformity with HUD circulars raises a question of fact which cannot be resolved at this stage of the proceedings.

The remaining contentions of the defendants addressed to Counts Five and Six must likewise fail. These Counts merely reaffirm the factual allegations of preceding Counts and concern themselves with the relief applied for by the plaintiffs. The propriety of the redress requested must, of course, await more advanced steps in this litigation.

Accordingly, the defendants' motion to dismiss is denied.