**Daniel BURR et al., Plaintiffs,**

v.

**The NEW ROCHELLE MUNICIPAL HOUSING AUTHORITY et al., Defendants.**

**No. 72 Civ. 1459.**

United States District Court, S. D. New York.

Sept. 15, 1972.

---

------◆------

The Legal Aid Society of Westchester County, New Rochelle, N. Y., for plaintiffs; Michael J. Dale, New Rochelle, N. Y., Martin A. Schwartz, White Plains, N. Y., of counsel.

Richard L. Baltimore, Jr., New York City, for defendants.

LASKER, District Judge.

Commencing August, 1971, the New Rochelle Municipal Housing Authority has been charging, in addition to the normal monthly rent, two dollars ($2) per room and one dollar ($1) per apartment on all apartments under its administration. These increases were imposed without a hearing and, in the case of the latter, without notice to the tenants.[1]

Plaintiffs, tenants in Housing Authority apartments, brought this suit against the Authority, its chairman and its project manager under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and 28 U. S.C. § 1331, claiming that defendants' failure to accord them adequate notice and a hearing on the increases denied them due process under color of state law in violation of the Fourteenth Amendment. They seek injunctive and declaratory relief preventing the Housing Authority from continuing to implement the increases and requiring it to refund the charges already collected, to give notice of the reasons necessitating the charges and to afford the tenants a hearing on the merits.

The defendants have moved to dismiss the complaint on the ground that the court lacks jurisdiction of the subject matter.[2] The plaintiffs have cross-moved for a class action order and for summary judgment.

*I. Jurisdiction.*

The defendants contend that jurisdiction does not lie under either "the Fourteenth Amendment" or 28 U.S.C. § 1331. We assume that by the former assertion they mean to allege that jurisdiction is not conferred by 28 U.S.C. § 1343(3). Plaintiffs, although originally relying on both § 1343(3) and § 1331, in their brief rely entirely on § 1343(3) to

1. Defendants contend that the $1 per apartment charge is merely part of the $2 per room charge since each apartment contains a half room and, therefore, that in giving notice of the $2 charge they also gave notice of the $1 charge.

2. In their moving papers, defendants rest their motion to dismiss on the following grounds: The complaint fails to state a claim upon which relief can be granted; the court lacks jurisdiction because the amount in controversy is less than ten thousand dollars; the court lacks jurisdiction because no federal question is involved; the court lacks jurisdiction because the action is improperly designated as a class action; the plaintiffs have not exhausted their remedies in the

State courts; the court should apply the judicial abstention doctrine and direct the plaintiffs to bring suit in the State courts. However, in their brief, defendants rely solely on their contention that jurisdiction is not conferred by "the Fourteenth Amendment" (by which we take it they mean 28 U.S.C. § 1343(3)) or by 28 U.S.C. § 1331, and on a further point not raised in their moving papers, namely, that jurisdiction is not conferred by 28 U.S.C. §§ 2201 and 2202. Since we consider that the points raised by the moving papers but subsequently dropped are without merit, we do not feel constrained to discuss them. As to the three points raised in the brief, our disposition of the first point makes it unnecessary for us to discuss the second and third points.

sustain jurisdiction. We agree with the plaintiffs that this court has jurisdiction under 28 U.S.C. § 1343(3).

■ The defendants, in contesting jurisdiction under "the Fourteenth Amendment", rely on the distinction as to the applicability of the Civil Rights Acts made in the case of Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969) (which in turn rested on a concurring opinion of Mr. Justice Stone in Hague v. C. I. O., 307 U.S. 496, 531, 59 S.Ct. 954, 83 L.Ed. 1423 (1939)), between personal liberties and property rights. *Eisen* held that the Civil Rights Act, 42 U.S.C. § 1983, and its jurisdictional counterpart, 28 U.S.C. § 1343(3), did not protect mere property rights. 421 F.2d at 566. However, the rationale has been emphatically rejected by the Supreme Court: "This Court has never adopted the distinction between personal liberties and proprietary rights as a guide to the contours of § 1343(3) jurisdiction. Today we expressly reject that distinction." Lynch v. Household Finance Corp., 405 U.S. 538, 542, 92 S.Ct. 1113, 1117, 31 L.Ed.2d 424 (1972). The Court thus laid to rest the notion that personal rights and property rights should be treated differently under the Civil Rights Act, since the right to enjoy property without unlawful interference is in itself a valuable personal right. 405 U.S. at 552, 92 S.Ct. 1113. After *Lynch* it is no longer open to doubt that a complaint predicated on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) cannot be dismissed because property rights alone are involved.

Thus, if the complaint properly alleges an infringement of rights under color of state law, jurisdiction exists. There is no question that such allegations are set forth. The Court of Appeals of this Court, in a recent decision involving the same defendant found the following facts: "The . . . Authority is a public corporation, established by § 407 of the New York Public Housing Law. . . . Its function is to build, maintain, and administer public housing fa-

cilities in New Rochelle. Funds were borrowed from the State of New York for construction purposes, and the Authority receives a subsidy from both the State and the City of New Rochelle . . . . New York law provides the general framework for eligibility requirements for admission to public housing and specifically allows each locality to set its own residence requirements." King v. New Rochelle Municipal Housing Authority, 442 F.2d 646 (2d Cir.), cert. denied, 404 U.S. 863, 92 S.Ct. 113, 30 L.Ed.2d 107 (1971). The Housing Authority is an entity which is established and controlled by the law of the State of New York. The facts and prior case law mandate the conclusion that its official actions are actions taken under color of State law. King v. New Rochelle Municipal Housing Authority, 442 F.2d 646 (2d Cir.), cert. denied, 404 U. S. 863, 92 S.Ct. 113, 30 L.Ed.2d 107 (1971); Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir.), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970); Holmes v. New York City Housing Authority, 398 F.2d 262 (2d Cir. 1968).

Moreover, the complaint specifies an infringement of plaintiffs' constitutional rights to due process. We defer discussion of the merits until our disposition of the motion for summary judgment. Suffice it to say that the prerequisites to § 1343(3) jurisdiction are amply met. Since we determine that jurisdiction exists under § 1343(3), it is unnecessary to discuss the applicability of § 1331.

*II. Motion for a class action determination.*

■ Rule 23(a), Fed.R.Civ.P., sets forth the prerequisites of a class action:

(1) [T]he class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the

representative parties will fairly and adequately protect the interests of the class.

Rule 23(b) (2) requires, in addition, that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." We find that the rule's requirements are amply satisfied. There are 520 families who reside in Housing Authority apartments, all of whom are affected by the service charge. The case involves one question of law, one claim, the resolution of which will affect the representative parties and all the members of the class equally. The representative parties have to date protected their interests and those of the class most thoroughly and there is no reason to doubt that they will continue to do so as long as necessary. Finally, the Housing Authority has, by imposing a service charge on all apartments, acted on grounds which are generally applicable to the class. The case is clearly appropriate for a class disposition and the motion for such a determination is granted.

### III. Motion for summary judgment.

▮ We come then to plaintiffs' motion for summary judgment, which, for the reasons set forth below, is granted. No issue of fact exists; the case resolves itself into a single question: Whether as a matter of federal constitutional law plaintiffs are entitled to a hearing. This question has received considerable attention in recent cases. See, e. g., Langevin v. Chenango Court, Inc., 447 F.2d 296 (2d Cir. 1971); Hahn v. Gottlieb, 430 F.2d 1243 (1st Cir. 1970); Keller v. Maremount Founda-

tion, C-71 1585 RFP (N.D.Calif., June 15, 1972); Armbrester v. Albany Housing Authority, 71-Civ.-21 (N.D.N.Y., Jan. 24, 1972); Geneva Towers Tenants Organization v. Federated Mortgage Investors, C-70-104 #SAW (N.D.Cal., January 8, 1972). Several answers have been provided by the cases. The Hahn court considered that rent increases involve legislative rather than adjudicative facts and, relying on Bi-Metallic Investment Co. v. State Bd. of Equalization, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915), held that a hearing was not required. 430 F.2d at 1248. Keller and Geneva Towers take a middle position and require that the tenants be given notice of the rent increase, a statement of the reasons for it and an opportunity to submit written objections to it. The Court of Appeals for this Circuit has taken a third approach.

In Langevin v. Chenango Court, the court refused to hold that a hearing was required. The reason, however, was that the rent increase in question was imposed by a private, though federally subsidized owner and was not an act "under color of state law." The court left no doubt that had the landlord been a public body the decision would have been otherwise. 447 F.2d at 300-01.[3] The Court of Appeals for this Circuit expressly rejected the rule enunciated by the First Circuit in Hahn. Id. Since the case before us involves a public body, the Langevin rationale dictates that a hearing is required.

Defendants contend that we have before us a service charge, whereas Langevin involved a rent increase. This is a distinction without a difference. Even if, as alleged by defendants, summary proceedings cannot be instituted against the tenants for non-payment of the service charge, they are nonetheless

---

3. Judge Oakes' dissent makes it clear that the only distinction which the majority opinion found between the case before it and the case with which we are dealing is that in Langevin "the Government did not itself increase the rents but simply allowed the landlord to institute an in-crease." Judge Oakes stated that to him this was a "distinction without a difference." However that may be, we deal here with a direct increase by the government body and not mere permission to a private landlord to institute an increase.

obliged to pay it or subject themselves to the panoply of remedies provided by state law for the collection of money owed. That the "service charge" is a rent substitute, if not rent, is clear from defendants' brief.[4] Whatever it is called, it is money out of plaintiffs' pockets and raises the same considerations as were involved in *Langevin*. We hold that *Langevin* applies and that a hearing is required.

We think, moreover, that this result accords with the trend in public benefit cases commenced by Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969). *Goldberg* instructs that to determine whether a hearing is required before public benefits can be terminated or modified the interests involved must be balanced. 397 U.S. at 263, 90 S.Ct. 1011.

Here the interests to be weighed are not costs versus low rents, as the defendants argue, but the desirability of a hearing from the point of view of the tenants versus the inconvenience such a hearing would cause the Housing Authority. The tenants want to participate in a decision which will significantly affect them.[5] Their interest in keeping rents low may be outweighed in the long run by the Authority's obligation to maintain services and prevent deterioration of the facilities it operates for the benefit of the public. It must, however, be duly considered as a factor in the decision as to increased charges and even the experts who are responsible for the final decision may be enlightened or influenced by the expressions of the tenants, through their spokesman. Furthermore, the choice as to how to distribute the cost among the tenants most equitably is also a matter on which the

tenants' views would be illuminating. Finally, we agree with the plaintiffs that "[a] hearing . . . can be a major aid in guarding against arbitrariness in the decision making process and in making the landlord-tenant relationship in public housing a far more comfortable one." Plaintiffs' Memorandum in Support of Motions for Class Action Order and Summary Judgment at 16. On the other hand, the burden which a hearing would impose on the Housing Authority does not appear great. In the first place, the Authority need only hold a single hearing to determine what course of action it will take. Second, although the Authority has a need for funds, it does not find itself in an emergency situation in which the delay occasioned by a hearing would cause great hardship. Finally, the burden of the hearing can be mitigated by reasonable procedures which the parties will work out under our supervision.

Defendants' motion to dismiss the complaint is denied. Plaintiffs' motion for a class action determination and for summary judgment is granted. The parties are instructed to confer for the purpose of agreeing on a joint order to be submitted setting forth the description of the class, or sub-classes if necessary, and provisions for appearance at a hearing of a spokesman or spokesmen for the tenants. The possible need for more than one spokesman may arise by virtue of the varying impact which different methods of allocating the charge would have on different groups of tenants. The requirements of due process will be met if the views of the class or sub-classes are expressed by spokesmen. Due process does not, of course, require that each tenant be permitted to speak

---

4. The defendants' brief states: "The amount of money which must be obtained from the tenants by service charge or rental increase will be apportioned differently to the various tenants, depending upon the method used. The service charge is the method selected by the Authority." Defendants' Memorandum in Opposition to Motions for Class Action Order and Summary Judgment at 10–11.

5. Moreover, we question whether the type of participation provided in *Keller* and *Genera Towers*—the opportunity to submit written objections—is sufficient. Such a procedure would be of limited value to persons whose educational background is limited.

pro se. These thoughts are included for the guidance of the parties. In the event that the parties are unable to frame a proposed order satisfactory to them both by October 6th, 1972, then each shall submit a proposed order by October 17th, 1972.

It is so ordered.