584 F.2d 609
 Michael X. HURLEY, Appellee,
v.
Benjamin J. WARD, Commissioner of the Department of
Correctional Services, and Joseph Keenan, Director of
Special Housing Units (Punitive Segregation), individually
and in their official capacities, Appellants.
 No. 75, Docket 78-2060.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 1, 1978.
Decided Oct. 6, 1978.
 
 Claudia Angelos, New York City (Prisoners' Legal Services of New York, Daniel J. Steinbock, New York City), for appellee.
 Paul E. Dahlman, Deputy Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of N. Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for appellants.
 Before KAUFMAN, Chief Judge, and LUMBARD and MULLIGAN, Circuit Judges.
 MULLIGAN, Circuit Judge:
 
 
 1
 Appellants, the Commissioner of the New York State Department of Correctional Services and the former Director of the Department of Corrections Special Housing Units (punitive segregated prisoner facilities), appeal from an order of May 5, 1978 by the United States District Court for the Southern District of New York, Hon. Robert L. Carter, Judge, granting a preliminary injunction enjoining the appellants from conducting visual searches of the anal and genital areas of all convicted inmates of the State correctional system without probable cause to believe that contraband is present, pending final determination of this action brought by a single inmate of that system, Michael X. Hurley, pursuant to 42 U.S.C. § 1983.
 
 
 2
 Hurley is a convicted felon, presently serving a term of 25 years to life in the New York State correctional system. He is also under indictment in New York State Supreme Court, Washington County, for assaulting a prison guard. His conduct in prison has been so offensive that he has been confined in the special housing unit (SHU) at three correctional facilities in which he has been incarcerated: Auburn, Attica and Great Meadow. SHU inmates are restricted to their cells for 23 hours a day in a cell block segregated from the general prison population. Among the strict security measures taken in the case of SHU inmates are routine "strip frisks"[1] of these prisoners before they leave the SHU if they are leaving the correctional facility for any reason and, in all cases, upon their return to the unit. 7 N.Y.C.R.R. § 1020.25(2)(b), (c). Moreover, an inmate such as Hurley, who has a history of assaults or possession of dangerous contraband, is strip frisked upon leaving the SHU to go anywhere within the correctional facility. 7 N.Y.C.R.R. § 1020.25(2).
 
 
 3
 In this action Hurley challenged the constitutionality of that portion of the strip frisk procedure requiring him to lift his testicles, bend over, and spread his buttocks to display his anus to the correctional officers.
 
 
 4
 Before issuing the preliminary injunction which is the subject of this appeal, Judge Carter held hearings on five days during which the appellee and two other SHU inmates at the Great Meadow correctional facility testified. Hurley also presented video tape recordings of strip searches to which he was subjected and the testimony of an expert witness who questioned the utility of the anal and genital portions of the strip frisk. In support of the efficacy of the anal and genital search the State offered the testimony of two correctional officers assigned to a facility in which Hurley had not been incarcerated. Judge Carter's opinion discussing the evidence adduced at these hearings is fully set forth in a reported opinion at 448 F.Supp. 1227 (1978) and need not be reiterated here. Suffice it to say that the record amply supports the finding that Hurley was strip frisked without probable cause frequently, unnecessarily and abusively.
 
 
 5
 We have recently had occasion to uphold a prohibition on anal and genital searches without probable cause of convicted inmates and pre-trial detainees in the federal Metropolitan Correction Center. Wolfish v. Levi,573 F.2d 118, 131 (2d Cir. 1978), application for cert. filed June 23, 1978, --- U.S. ----, 99 S.Ct. 76, 58 L.Ed.2d 107 (1978). See Frazier v. Ward, 426 F.Supp. 1354 (N.D.N.Y.1977) (prohibiting anal and genital searches without probable cause of SHU inmates at New York State's Clinton Correctional Facility). In neither Wolfish nor Frazier was significant evidence offered in support of the claim that the challenged searches were justified to prevent the introduction of contraband into the facility. Also, in both cases due to other security precautions employed at the facility the anal and genital searches were of little, if any demonstrated security value. Without reviewing all the evidence set forth in Judge Carter's opinion below in the instant case, it is clear to us that here also the gross violation of personal privacy involved in the anal/genital searches of Hurley especially in view of the physical and verbal abuse incident to the procedure far outweighed the evidence adduced by the State at the preliminary hearing to justify the searches as a prison security measure.
 
 
 6
 We recognize that the Supreme Court has cautioned that we must pay particular deference to the exercise of informed judgment by prison officials in their administration of state penal institutions. E. g., Procunier v. Martinez, 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Nevertheless, on the record before us we find no abuse of discretion in the issuance of that aspect of the preliminary injunction prohibiting the anal and genital searches without probable cause of appellee Hurley. Doran v. Salem Inn, Inc., 422 U.S. 922, 931-32, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); Triebwasser & Katz v. American Telephone & Telegraph Co., 535 F.2d 1356, 1358 (2d Cir. 1976). The grant of preliminary injunctive relief from these searches to all inmates of New York State correctional facilities, however, constitutes an abuse of discretion which requires reversal Pro tanto. This case was brought initially Pro se by Hurley as an individual action. Even after the Prisoners' Legal Services of the State of New York entered the suit as counsel for Hurley, no class certification was sought. The evidence adduced for the appellee at the hearing in the district court principally demonstrated the abuse to which Hurley was personally subjected during these searches. The testimony also demonstrated that in the case of a SHU inmate like Hurley, who was heavily shackled and under close and constant guard during the few restricted excursions from his segregated cell, the routine searches were unnecessary and unjustified. But the record casts little, if any, light on the necessity for or abuse during anal and genital searches of prisoners held in less restrictive confinement.
 
 
 7
 Appellee's argument that class action certification was not essential to the broad preliminary relief granted below rests upon our decision in Galvan v. Levine, 490 F.2d 1255 (2d Cir. 1973), cert. denied, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974). However, that case is clearly inapposite. In Galvan and in other similar decisions,[2] the constitutionality of a statute or administrative practice was in issue and the State conceded that the same legal question was posed by the application of the challenged statute or practice to all those within the purported class. Since it is ordinarily assumed that state officials will abide by the court's judgment, where the State has admitted the identity of issues as to all potential class litigants class certification is indeed unnecessary. But the State here has made no concession that the issues presented by routine anal and genital searches of all prisoners in the New York State penal system are identical to those raised by the searches of Hurley. The record in this case, as we have pointed out, focused upon Hurley and not the general prison population.
 
 
 8
 Finally, at this preliminary stage it is particularly inappropriate that an injunction in such sweeping terms should issue since it represents a serious intrusion upon the exercise of informed judgment by those officials charged with the "complex and difficult" task of operating state penal institutions. Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 126, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); accord, Pell v. Procunier, 417 U.S. 817, 827, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); Procunier v. Martinez, supra.
 
 
 9
 Accordingly, we reverse that portion of the district court's order granting preliminary relief from anal and genital searches without probable cause for all inmates of the New York State correctional system and restrict application of the injunction to appellee, Michael X. Hurley.
 
 
 10
 Affirmed in part; reversed in part and remanded.
 
 LUMBARD, Circuit Judge (concurring):
 
 11
 Although I concur in my brothers' opinion, I think it is important to note that other federal courts have refused to interfere with state prison officials' use of routine strip search procedures.[1] In light, however, of the district court's preliminary findings regarding the circumstances of Hurley's confinement, the absence of a convincing demonstration as to the need for strip searches with body cavity inspection, and the abuse to which Hurley has been subjected while being strip searched, I believe that those decisions are clearly distinguishable from the instant case.
 
 
 
 [1]
 The term "strip frisk" is defined in 7 N.Y.C.R.R. § 1020.5(b) as follows:
 A Strip frisk means a search of an inmate's person and his clothes after the inmate has removed all his clothing. The search includes a thorough inspection of the clothing and a close visual inspection of the inmate's person, including body cavities. If there is reasonable cause to believe contraband has been concealed in a body cavity, the inmate shall be immediately examined and/or x-rayed by a facility health staff member. (Emphasis in original).
 
 
 [2]
 E. g., Finnerty v. Cowen, 508 F.2d 979, 986 n. 20 (2d Cir. 1976); Feld v. Berger, 424 F.Supp. 1356, 1363 (S.D.N.Y.1976); Spirt v. Teachers Insurance and Annuity Association, 416 F.Supp. 1019, 1024 (S.D.N.Y.1976)
 
 
 [1]
 Hodges v. Klein, 412 F.Supp. 896 (D.N.J.1976); Giampetruzzi v. Malcolm, 406 F.Supp. 836 (S.D.N.Y.1975); Penn-El v. Riddle, 399 F.Supp. 1059 (E.D.Va.1975); cf. Gettleman v. Werner, 377 F.Supp. 445 (W.D.Pa.1974). Routine strip searches in federal prisons have also been approved. Daughtery v. Harris, 476 F.2d 292 (10th Cir. 1973), cert. denied, 414 U.S. 872, 94 S.Ct. 112, 38 L.Ed.2d 91 (1973); Bijeol v. Benson, 404 F.Supp. 595 (S.D.Ind.1975), rev'd and remanded without opinion, 556 F.2d 584 (7th Cir. 1977). As to whether the cases involving federal prisons can be squared with our recent decision in Wolfish v. Levi, 573 F.2d 118 (1978), cert. granted sub nom. Bell v. Wolfish, --- U.S. ----, 99 S.Ct. 76, 57 L.Ed.2d ---, 1978, I offer no opinion