**Tyrone ASHE et al., Plaintiffs,**

v.

**The BOARD OF ELECTIONS IN the CITY OF NEW YORK et al., Defendants.**

**No. CV–88–1566.**

United States District Court, E.D. New York.

Feb. 2, 1989.

Center for Law and Social Justice, Medgar Evers College/CUNY by Esmeralda Simmons, Paul Wooten, Wendy Brown, Brooklyn, N.Y., for plaintiffs.

Corporation Counsel by Diane J. Morgenroth, Steven H. Mosenson, Lina Liberatore, New York City, for city defendants in New York Vote.

Office of Atty. Gen. by Charles Fraser, New York City, for state defendants.

Thomas P. Zalezzi by Stanley Zalen, Albany, N.Y., for Bd. of Elections.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

In this challenge to the voting procedures maintained by the City of New York, plaintiffs have moved to certify a class of voter plaintiffs and a subclass of delegate-candidate plaintiffs. Because plaintiffs have shown the requirements of Federal Rules of Civil Procedure 23(a) and (b)(2) to be satisfied as to the proposed class, that motion is granted. Because they have failed to make such a showing as to the proposed subclass, that motion is denied.

The facts relevant to this motion are not disputed except as noted. Plaintiffs claim that defendants disenfranchised thousands of minority voters in the April 1988 presidential primary and impaired the showing made by certain delegate-candidates through a "wholesale dereliction of duty" that had a disproportionate impact in predominately minority voting districts. They allege, *inter alia,* failure to properly prepare for elections; failure to appoint properly trained election day staff; failure to provide operable voting machines in minority election districts; failure to properly register voters or to cancel obsolete voter registrations; erroneous cancellations of proper registrations; use of a computer purging system that had not been precleared by the United States Justice Department; and failure to ensure that registration ("buff") cards were at polling sites.

These allegations are claimed to violate the Voting Rights Act; the Civil Rights Act; the thirteenth, fourteenth, and fifteenth amendments to the United States Constitution; Article I, section 11 of the New York Constitution; and the New York Civil Rights and Election Laws.

Plaintiffs seek declarations that those provisions of the Election Law providing for bipartisan control of elections are unconstitutional and that defendants' conduct is unconstitutional; injunctions preventing further elections under the system as it now stands, and directing defendants to devise a new election system and to restore to the rolls those minority voters whose registration was unlawfully cancelled within the year preceding the April primary; and costs and fees.

### MOTION TO CERTIFY CLASS OF VOTERS

■ A preliminary dispute concerns the breadth of the class that is sought to be certified.

The complaint states that the action is brought "on behalf of themselves and all Black and Hispanic citizens who were denied the right to vote, or whose constitutional right to vote was challenged by defendants." Thus, the class would be limited to those already actually affected by defendants' conduct. But the notice of motion for class certification describes the class more broadly, as including those who, although not harmed in the primary, may be harmed in the future.

Defendants protest this "wholesale broadening of the class description, devoid of any factual basis or even any allegation in the Amended Complaint." With one exception, all of the relief that plaintiffs seek is prospective, affecting the conduct of future elections as well as bearing on the validity of the primary. The one exception is item (i) of the relief requested, which seeks restoration to the rolls of those whose registration has wrongfully been voided or held ineffective within the year preceding the primary.

Defendants have not shown why the class should not take the broader form now suggested by plaintiffs. The class need not be so clearly defined that every class member can be identified at the commencement of the action, 7A C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure* § 1760, at 117. Nor does the fact that future members are included pose an obstacle. *See, e.g., Robertson v. National Basketball Association,* 389 F.Supp. 867, 897 (S.D.N.Y.1975). If appropriate, upon sharpening of the issues later in the litigation, this broader class might be divided into subclasses under Rule 23(c)(4)(A) of the Federal Rules of Civil Procedure.

### Rule 23(a): Prerequisites
#### 1. Numerosity

Plaintiffs are not required to state the precise number of the purported class. *Somerville v. Major Exploration, Inc.,* 102 F.R.D. 500, 503 (S.D.N.Y.1984).

Whether the numerosity requirement is satisfied depends on the facts of each case and is within the discretion of the trial court. *Norwalk CORE v. Norwalk Rede-*

*velopment Agency,* 395 F.2d 920, 937 n. 41 (2d Cir.1968); 7A Wright, Miller and Kane, *supra,* § 1762, at 195. Factors to be considered in deciding whether numerosity is such that "joinder of all members is impracticable" include the number of parties involved, the inconvenience of trying individual suits, the nature of the action, the size of the individual claims, and the location of the members of the class. *Id.,* at 188, 192.

Here, plaintiff has not furnished the Court with copies of defendants' discovery responses but cites them as showing that "thousands of eligible Black and Hispanic voters were denied the right to vote." As noted, defendant takes no position in opposition to this assertion.

Such a large number of potential plaintiffs clearly makes their separate joinder "impracticable." Rule 23(a)(1). *Burr v. New Rochelle Municipal Housing Authority,* 347 F.Supp. 1202 (S.D.N.Y.1972), *modified and aff'd on other grounds,* 479 F.2d 1165 (2d Cir.1973) (520 members).

#### 2. Common Questions of Law or Fact

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." This does not require that all questions of law or fact be common. *Weiss v. York Hospital,* 745 F.2d 786, 809 (3d Cir. 1984).

As to common questions of law, a broad one exists: whether the class members were improperly deprived by defendants of their rights under the state and federal constitutions, the Voting Rights Act, and the New York Civil Rights and Election Laws. As the Supreme Court wrote, "We are not unaware that suits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs. Common questions of law or fact are typically present." *East Texas Motor Freight Co. v. Rodriguez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 1898, 52 L.Ed.2d 453 (1977). "[W]hether the Damoclean threat of a racially discriminatory policy hangs over the racial class is a question of fact common to all the members of the class." *Hall v. Werthan Barge Corp.,* 251 F.Supp.

184, 186 (D.Tenn.1966), cited with approval in *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1984) (hereinafter "*Falcon*").

Defendants do not dispute the commonality of this question of law, but they argue that "the existence of myriad differences in the factual circumstances precludes class certification." This argument must fail for two reasons. First of all, under the plain language of the rule, plaintiffs need only show that common questions of law or fact exist. *Accord, Ortiz v. Eichler*, 616 F.Supp. 1046, 1054 (D.Del.1985); *Like v. Carter*, 448 F.2d 798, 802 (8th Cir.1971) ("Factual differences are not fatal if common questions of law exist."). The *Ortiz* court's discussion is instructive:

> "Plaintiffs seek to prove that defendants have engaged in certain practices in issuing notices, conducting hearings, and ruling after the hearings. Plaintiffs do not seek to relitigate each class members' claim; instead, they will use examples from the cases of class members to show that the alleged patterns or practices actually exist. While the factual patterns give rise to the common questions of law, the facts of individual cases have no separate significance. Moreover, judicial economy is served by adjudicating the legal questions raised by defendants' conduct in one action, rather than having each class member petition the court to find facts and decide questions of law. In sum, the Court finds that common questions of law exist and that Rule 23(a)(2) is satisfied."

616 F.Supp. at 1055.

Second, there are indeed adequate common questions of fact here. Defendants argue that "the specific reason why an individual's ballot was not counted or registration cancelled is necessarily a fact-based determination unique to that voter." Defendants may well be correct on one level, but it is equally true that on a different level the Court will need to determine whether defendants' actions were racially discriminatory—a question common to all class members. As the Second Circuit wrote in a case brought by those who were forced by urban renewal projects to relocate and who claimed equal protection violations in defendants' efforts to facilitate that relocation,

> "[w]e think that the District Court erred in reading the complaint as requesting ultimately that the Court concern itself with the particular circumstances of each displacee's relocation. The complaint alleges both that Negroes and Puerto Ricans were discriminated against in connection with relocation and that the relocation standards of [Housing Act] section 105(c) were generally not met for Negro and Puerto Rican displacees. These allegations clearly raise questions of fact common to the class which plaintiffs represent."

*Norwalk CORE v. Norwalk Redevelopment Agency, supra*, 395 F.2d at 937.

For this reason, *Reddix v. Lucky*, 252 F.2d 930 (5th Cir.1958), cited by defendants, should not control our analysis. This was a pre-Voting Rights Act case challenging the purging of 3,000 blacks from the registration rolls. The court held that class certification was inappropriate because "[t]he fact that each voter must allege and prove the circumstances that might add up to an illegal purge makes it inappropriate, if not impossible, for a single plaintiff to represent them in a class action." 252 F.2d at 938. This reasoning is thin. Moreover, that case was a challenge to a single incident rather than to alleged system-wide shortcomings. The latter kind of challenge, as in the instant case, naturally presents common questions of fact that are more significant.

Defendants also cite *Ramey v. Rockefeller*, 348 F.Supp. 780 (E.D.N.Y.1972) (three-judge panel). This was a challenge to the constitutionality of the New York Election Law's provision that denied the right to vote to students who lived in dormitories on the ground that their "residence" for voting purposes was elsewhere. The court held that it should abstain on the ground that state law was unclear and could be construed constitutionally. It then proceeded to remark, "[s]ince the case of each

person seeking registration must stand on its own facts, the actions are presently inappropriate for class designation." 348 F.Supp. at 791. Obviously, the court was not announcing a *per se* rule that all voter registration actions are unsuitable for class action treatment; the word "presently" implies that the court was thinking of possible factual changes that might occur during the interval of its abstention.

*See also Pitts v. Black*, No. 84–5270, slip op. (S.D.N.Y.1984), where Judge Lowe answered defendant's multiplicity-of-facts argument as follows: "While defendants' argument has facial plausibility, it misperceives the essence of this litigation. As this court reads the complaint herein, it alleges a common question of law, *viz*, whether the New York City Board of Elections has constitutionally construed the New York State Election Law, as applied to the plaintiff class, to deny the right to class members to register and vote because they live in non-traditional residences." Slip op., at 4.

Finally, we observe that common questions of law or fact need not "predominate" in all class actions; that is an alternative basis for certification of classes provided in Rule 23(b)(3), upon which plaintiffs here do not rely.

### 3. *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."

The commonality and typicality requirements "tend to merge," both being "guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected." *Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13. "Whether there are problems regarding typicality and adequacy of representation depends on the nature of the questions of law or fact common to the class. Our view of the existence of the third and fourth prerequisites is thus influenced by our view of the second."

*In re Agent Orange Product Liability Litigation*, 818 F.2d 145, 164 (2d Cir.1987). *See also National Super Spuds v. New York Mercantile Exchange*, 660 F.2d 9, 17 (2d Cir.1981).

Defendants argue that "plaintiffs cannot represent a class of disenfranchised voters when they were properly not permitted to vote" and set forth an account purporting to show that each of the named plaintiffs was denied his vote in the primary for a proper reason. In each case, defendants' account is either the subject of a factual dispute concerning the merits of the particular plaintiff's claim or fails to rebut plaintiff's allegations of improper election procedures. Specifically, plaintiff Nora Pless alleges that her buff card was improperly absent from the polling place and that her affidavit ballot was not counted. Adrienne Holmes alleges that a broken voting machine would not accept her vote for a certain delegate. Leslie Nathaniel alleges never having been notified that her registration was cancelled. Tyrone Ashe alleges that defendants wrongfully found him not to be registered, when in fact he had been registered since 1980. Gynnie DeJesus alleges that defendants erroneously told her that her affidavit ballot would be counted; the facts she relates also support a claim that she was never informed that her registration had been cancelled. Pless, Nathaniel, Ashe, and DeJesus also allege that their buff cards were improperly missing from the polling places.

The named plaintiffs' claims are clearly "typical" of those asserted on behalf of the class. "[Plaintiff's] evidence, if believed, would indicate that [defendant] discriminated 'in the same general fashion' against [plaintiff] and against other class members.... No more was necessary to satisfy the typicality requirement of Rule 23(a)." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir.1986), *quoting Falcon*, 457 U.S. at 159 n. 15, 102 S.Ct. at 2371 n. 15.

The fact that defendants contest those claims is irrelevant for class certification purposes. "We find nothing in either the language or history of Rule 23 that gives a

court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs ... will prevail on the merits.'" *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974) *quoting Miller v. Mackey International,* 452 F.2d 424, 427 (5th Cir.1971).

### 4. *Adequacy of Representation*

Rule 23(a)(4) requires that "the representative parties ... fairly and adequately protect the interests of the class." This rule does not require that the representation be the "best." 7A Wright, Miller and Kane, *supra,* § 1765.

The requirement is twofold. First, the representative's " 'attorney [must be] qualified, experienced, and generally able to conduct the proposed litigation,' and the litigants must not be involved in a collusive suit." *Burka v. New York City Transit Authority,* 110 F.R.D. 595, 601 (S.D.N.Y. 1986), *quoting Eisen v. Carlisle & Jacquelin,* 391 F.2d 555 at 562 (2nd Cir.1968). *Cf. Falcon, supra,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13 ("competency of class counsel"). Here, the three attorneys for plaintiffs have extensive experience with voting rights and class action litigation. Defendants "express no opinion as to the qualifications of plaintiff' counsel." Nor is there any reason to suspect a collusive suit.

Defendants do raise one issue concerning counsel. One of the affidavits of Wendy Brown, counsel for plaintiffs, relates factual matters that occurred on the day of the primary. Defendants note that if she were to take the stand as a witness, she and her firm might have to withdraw from the case. *See* ABA Model Code of Professional Responsibility DR 5–102(A). But, even if defendants are correct about counsel's ethical obligations, these are both far down the road and are not within the scope of Rule 23's concern with counsel's adequacy.

The second requirement of Rule 23(a)(4) is that the representative parties will fairly and adequately protect the interests of the class. This "amounts to little more than [a restatement of Rule 23(a)(3)'s prescription] that the plaintiff's claim must be typical of those of the entire class." *Eisen v. Carlisle & Jacquelin, supra,* 391 F.2d at 563; *Burka, supra,* 110 F.R.D. at 601. *See also Falcon, supra,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13 (commonality and typicality "also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest").

Here, defendants assert no conflict of interest between the named voter plaintiffs and the absent class members, nor does it appear how they could.

### *Rule 23(b)(2): Relief with Respect to Class as a Whole*

In addition to all of the foregoing requirements of Rule 23(a), plaintiffs must satisfy one of the three prongs of Rule 23(b). Plaintiffs here rely on Rule 23(b)(2).

To fall within this provision, a suit must meet two factors: (a) the defendants' conduct must be "generally applicable" to the class, and (b) final injunctive or declaratory relief must be sought in favor of the class.

Plaintiffs allege the first factor to be present here. The "ground[ ] generally applicable to the class" is race. The presence of a factual dispute raised by defendants concerning this factor will not bar class certification. *Paxman v. Campbell,* 612 F.2d 848, 854 (4th Cir.1980).

The second factor of Rule 23(b)(2) is also present here. Plaintiffs seek both declaratory and injunctive relief in favor of the class.

Defendants attempt to turn this second factor on its head, arguing that, because plaintiffs seek only declaratory and injunctive relief, class certification is not necessary. In support, they invoke a line of cases holding that under some circumstances class certification is a "formality." The leading case is *Galvan v. Levine,* 490 F.2d 1255 (2d Cir.1973), in which Judge Friendly wrote:

"But insofar as the relief sought is prohibitory, an action seeking declaratory or

injunctive relief against state officials on the ground of unconstitutionality of a statute or administrative practice is the archetype of one where class action designation is largely a formality, at least for plaintiffs. As we have recently noted in *Vulcan Society v. Civil Service Comm'n*, 490 F.2d 387, 399 ([2nd Cir.] 1973), what is important in such a case for the plaintiffs or, more accurately, for their counsel, is that the *judgment* run to the benefit not only of the named plaintiffs but of all others similarly situated, as the judgment did here. The State has made clear that it understands the judgment to bind it with respect to all claimants; indeed even before entry of the judgment, it withdrew the challenged policy even more fully than the court ultimately directed and stated it did not intend to reinstate the policy."

Id., at 1261 (emphasis in original) (citations omitted).

But this line of cases may be distinguished on several grounds. The first ground for distinction is that in this case, as in *Jane B. v. New York City Dep't of Social Services*, 117 F.R.D. 64 (S.D.N.Y. 1987), plaintiffs "do not seek merely prohibitory relief declaring a statute or administrative practice unconstitutional. Rather, they seek relief that would require defendants to take 'affirmative steps to remedy existing unconstitutional conditions ... and implement standards that comport with the mandates of federal and state laws and regulations.'" *Jane B., supra*, 117 F.R.D. at 72. *See e.g.*, Amended Complaint, at 22–23 (praying court to order defendants to devise new electoral process and to restore Black and Hispanic voter registrations). *Galvan* is "wholly inapplicable to this situation." *Jane B.*, 117 F.R.D. at 72. *Accord, Milburn v. Coughlin*, No. 79–5077 (S.D.N.Y.1980), cited in *Jane B.*, 117 F.R.D. at 72: "Were Galvan taken to this extreme, certification pursuant to Rule 23(b)(2) would never be appropriate, because the very facts which would make certification possible would render it unnecessary."

Moreover, in *Galvan*, the defendant "conceded that the same legal question was posed by the application of the challenged statute or practice to all those within the purported class. Since it is ordinarily assumed that state officials will abide by the court's judgment, where the State has admitted the identity of issues as to all potential class litigants class certification is unnecessary." *Hurley v. Ward*, 584 F.2d 609, 611–12 (2d Cir.1978). But in *Hurley* there was no such concession, and so *Galvan* was held "clearly inapposite," and the trial court's grant of class certification, affirmed. *Id.* Here as in *Hurley*, "with the same breath, defendants contest the commonality of questions of fact and law presented by plaintiff's allegations of class injury and the typicality of plaintiff's claims." *Hurley*, on remand, No. 77–3847 (S.D.N.Y.1979).

A related ground for distinguishing *Galvan* is that here the defendants assert that they have no "policy" with which issue should be taken in the first place. As the court wrote in *Handschu v. Special Services Division*, No. 71–2203 (S.D.N.Y.1979), a case in which politically active individuals claimed a chilling of their rights arising out of surveillance by the New York City Police Department,

"[t]wo crucial points serve to distinguish this case from *Galvan*. In the first place, the challenge here is not to a statute or specifically enunciated policy, but rather to wide-ranging course of conduct encompassing a variety of activities. Secondly, the state neither acknowledges the existence of a 'policy' underlying these activities nor accedes to the identity of the issues presented. In point of fact, the defendant takes just the opposite tack, arguing that such abuses as may have occurred were isolated instances of aberrational behavior, with no nexus in law or fact.... Class action treatment of this litigation is necessary to an informed consideration of plaintiffs' claim of a pattern or practice of unconstitutional conduct."

A further ground for finding class certification to be more than a "formality" here is to avoid the danger of the individual plaintiffs' claims becoming moot before a final adjudication. *Jane B. v. New York*

*City Department of Social Services,* 117 F.R.D. 64, 72 (S.D.N.Y.1987); *Follette v. Vitanza,* 658 F.Supp. 492, 507 (N.D.N.Y. 1987); *Cicero v. Olgiati,* 410 F.Supp. 1080, 1099 n. 8 (S.D.N.Y.1976).

For all of the foregoing reasons, plaintiffs' motion to certify a class of voter plaintiffs is granted.

## MOTION TO CERTIFY CLASS OF DELEGATE CANDIDATES

■ Plaintiffs ask this Court to certify a subclass consisting of the delegate-candidate plaintiffs whose support was allegedly diminished in the primary by virtue of defendants' weakening of minority voting power.

Subclasses are governed by Rule 23(c)(4)(B):

"When appropriate ... a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly."

This section's instruction that "the provisions of this rule shall then be construed and applied accordingly" means that a subclass must independently meet the requirements of Rule 23 for maintenance of a class action. 7B Wright, Miller and Kane, *supra,* § 1790, at 284.

"[A]ctual, not presumed, conformance with Rule 23(a) remains ... indispensable." *Falcon, supra,* 457 U.S. at 160, 102 S.Ct. at 2372. While the proposed subclass may very well satisfy the rule's requirements, plaintiffs at this point have failed to so demonstrate. For example, as to the numerosity requirement, eleven delegate-candidates are now named as plaintiffs; there is no indication how many more would claim harm from defendants' acts or that the joinder of such additional plaintiffs would be "impracticable."

Therefore, the motion to certify a subclass of delegate candidate plaintiffs is denied, without prejudice to its renewal.

Accordingly, for the reasons stated above, plaintiff's motion to certify a class of voter plaintiffs is granted but denied as to a certification of a subclass of delegate-candidate plaintiffs.

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.