[ PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 28 2000
THOMAS K. KAHN
CLERK

_____

Nos. 00-10122 & 00-11469
_____

D. C. Docket No. 98-02295-CV-AR-S

SANDY SKURSTENIS,

Plaintiff-Appellant,

versus

JAMES JONES, Sheriff,
WAYNE WATTS, Captain, individually, et al.,

Defendants-Appellees.

_____

_____

No. 00-10603
_____

D. C. Docket No. 98-02295-CV-AR-S

SANDY SKURSTENIS,

Plaintiff-Appellee,

versus

JAMES JONES, Sheriff,
T.O. RICHEY, individually,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Alabama
_____
(December 28, 2000)

Before TJOFLAT and BIRCH, Circuit Judges, and VINING*, District Judge.

VINING, District Judge:

These consolidated appeals involve the constitutionality of two strip searches performed on a detainee who had been arrested for driving under the influence of alcohol. The first search, for weapons and contraband, occurred when the detainee was booked into the jail and was conducted by a female deputy; the second search, for lice, took place the following morning and was conducted by a male nurses assistant. The district court held that both searches were unconstitutional but that the sheriff and deputy sheriff were entitled to qualified immunity with respect to the initial search; the district court further held that neither the sheriff nor the nurses assistant was entitled to qualified immunity with respect to the second search. Concluding that both searches were constitutional, we affirm in part, albeit on different grounds, and reverse in part.

_____
*Honorable Robert L. Vining, Jr., U.S. District Judge for the Northern District of Georgia, sitting by designation.

I. BACKGROUND

On the evening of May 8, 1998, a Shelby County, Alabama, deputy sheriff arrested Sandy Skurstenis for driving under the influence of alcohol. Her blood alcohol registered .18 on the deputy's portable Breathalyzer and registered .15 on an intoxilyzer test administered shortly thereafter. At the time of her arrest, Skurstenis had a .38 special handgun, for which she had an expired permit, in the floorboard of her car.

After her arrest, Skurstenis was taken to the Shelby County Jail, where, because of her blood alcohol level, she was to remain until around 11:00 a.m. the following morning.[1] After being booked into the jail, Skurstenis was taken to a restroom adjacent to the booking area by Deputy Stacy Blankenship, a female officer. Skurstenis was told to disrobe, to turn and face the wall, and to squat and cough. After doing this, she was given a jail uniform, was escorted by Deputy Jason Smitherman through an area where other female inmates were sleeping, and was placed in a solitary cell.

The next morning, at approximately 10:30 a.m., Skurstenis was instructed to go to the infirmary, where she encountered three other female inmates and one

[1] Individuals arrested for driving under the influence cannot be released on bond but must be detained in jail for a number of hours, depending on the degree of intoxication. Alabama Code § 31-5A-191 (1975).

male, T. O. Richey, a nurses assistant,[2] employed by the Shelby Baptist Medical Center. Richey worked part-time at the jail pursuant to a contract between the sheriff's office and the medical center. When he was finished with the other inmates, Richey asked them to leave and then informed Skurstenis that pursuant to the jail's policy, he was required to run certain tests on her. After Skurstenis signed a consent form, Richey took some blood samples from her and then told her to pull her pants down so that he could check for lice. Richey ran his fingers through the hair on her head and also through her pubic hair. At no time did he touch her genitalia. When the examination was completed, Skurstenis left the infirmary and a short time thereafter was discharged from the jail and left with her husband, who had come to get her.

Skurstenis subsequently filed this action against Sheriff James Jones, Chief Jailer Captain Wayne Watts, Deputies Jason Smitherman and Stacy Blankenship, and T. O. Richey in their individual capacities, and asserted claims under 42 U.S.C.

---

[2] His official title is "multi functional technician."

§ 1983 for constitutional violations[3] and under state law for invasion of privacy, assault, and battery.[4]

In ruling on the defendants' motions for summary judgment, the district court granted summary judgment to Captain Watts and Deputy Smitherman on the basis that they had no real connection to the strip search that occurred when Skurstenis was booked into the jail and that her complaint, therefore, failed to state a claim against them. The district court further held that the initial strip search violated the Skurstenis's constitutional rights but that Sheriff Jones and Deputy Blankenship were entitled to qualified immunity. Finally, the district court held that the infirmary search violated Skurstenis's constitutional rights, that Sheriff Jones was not entitled to qualified immunity, that Richey had no standing to assert qualified immunity, and that, even if he did, he would not be entitled to qualified immunity.[5] Recognizing that only the denials of qualified immunity would be

---

[3] In her complaint Skurstenis alleged that her Fourth and Fourteenth Amendment rights were violated. Since she did not contend that any procedural due process rights were violated, the district court correctly analyzed her claims as being under only the Fourth Amendment. The Supreme Court has held that, where an enumerated constitutional right specifically applies to a claimed violation, the claim should be analyzed only as a possible violation of that enumerated right, not under the generalized notion of substantive due process. *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865 (1989).

[4] Skurstenis also sued Shelby County and Shelby Baptist Medical Center. The district court, however, dismissed Skurstenis's claims against those entities, and those dismissals are not challenged in this appeal.

[5] The district court also granted summary judgment to Captain Watts with respect to the infirmary search, since the claim against him was based on the fact that he was the chief jailer. The

5

appealable as a matter of right, the district court certified its order pursuant to 28 U.S.C. § 1292(b), and this court granted permission for Skurstenis to appeal those portions of the district court's order which granted qualified immunity.

## II.  DISCUSSION

A district court's grant or denial of summary judgment is subject to *de novo* review by this court.  Hamilton v. Allen-Bradley Co., 217 F.3d 1321 (11th Cir. 2000).

In *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861 (1979), the Supreme Court held that routine strip searching of pretrial detainees was not a per se violation of the Fourth Amendment prohibition against unreasonable searches and seizures.  In articulating the balancing test applicable to such searches, the Court stated:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it occurred.

*Id.* at 559, 99 S. Ct. at 1884.

---

district court correctly noted that under Alabama Code § 14-6-1, the sheriff, not the jailer, is the person given legal responsibility for the legal custody of inmates and that, consequently, the sheriff, not the chief jailer, is the final decision maker about jail policy.

The *Bell* balancing test for reasonableness requires, at a minimum, that the facts upon which the intrusion is based be capable of measurement against an objective standard. Although one appellate court initially suggested that probable cause might be required to justify a strip search, *Tinetti v. Wittke*, 620 F.2d 160 (7th Cir. 1980) ("The searches were conducted despite the absence of probable cause to believe that the detainees were concealing contraband or weapons on their bodies."), the courts of appeal now recognize that "reasonable suspicion" may justify a strip search of a pretrial detainee. *See, e.g., Swain v. Spinney,* 117 F.3d 1 (1st Cir. 1997); *Warner v. Grand County,* 57 F.3d 962 (10th Cir. 1995); *Weber v. Dell*, 804 F.2d 796 (2d Cir. 1986) *Stewart v. Lubbock County, Texas*, 767 F.2d 153 (5th Cir. 1985); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir. 1983). Indeed, in upholding the strip search of a juvenile, this court specifically held that law enforcement officers "may conduct a strip search of a juvenile in custody, even for a minor offense, based upon reasonable suspicion to believe that the juvenile is concealing weapons or contraband." *Justice v. City of Peachtree City*, 961 F.2d 188, 193 (11th Cir. 1992).

It is undisputed that Policy Number B-103 of the Shelby County Jail requires that each inmate be strip searched by a same sex jail staff member before being placed in a cell or detention room. This policy, which does not require any

7

reasonable suspicion, does not comport with the requirements of the Fourth Amendment. This court thus joins every other circuit which has had occasion to review a similar policy and holds such policy to be unconstitutional. *See Chapman v. Nichols*, 989 F.2d 393 (10th Cir. 1993) (citing cases from other circuits holding same).

Because of one significant factor, however, this holding does not mean that the initial strip search performed on Skurstenis was *ipso facto* unconstitutional. When she was arrested and taken into custody, Skurstenis had a .38 special handgun in her possession. Recognizing, as did the *Bell* court, that a detention center is a place "fraught with serious security dangers," *Bell*, 441 U.S. at 559, 99 S. Ct. at 1884, and, because of the deference that should be afforded in matters of institutional security, *see, e.g., Hughes v. Rowe,* 449 U.S. 5, 101 S. Ct. 173 (1980), this court holds that possession of a weapon by a detainee provides the "reasonable suspicion" necessary to authorize a strip search.

Having concluded that the search was justified, the court must now consider the other *Bell* factors, *viz.,* the manner in which the search was conducted and the place in which it was conducted. Skurstenis was taken to a bathroom and was observed only by Deputy Blankenship, a female officer; no body cavity search was undertaken. Under similar facts, this court concluded, "Without a doubt, the

8

officers conducted the strip search in the least intrusive manner." *Justice*, 961 F.2d at 193. Consequently, this court concludes that Skurstenis's constitutional rights were not violated by the strip search performed when she was booked into the jail.

The court now turns to the strip search performed on Skurstenis by T. O. Richey, the morning after she was incarcerated. A sheriff in Alabama "has the legal custody and charge of the jail in his county and all prisoners committed thereto." Alabama Code § 14-6-1 (1975). Thus, for purposes of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978), the sheriff is the final decision maker with respect to jail policy.

The Alabama legislature has mandated that sheriffs "exercise every precaution to prevent the spread of disease among the inmates." Alabama Code § 14-6-95. Pursuant to this mandate, the Shelby County jail instituted a policy of searching all inmates who have been admitted to the general jail population for communicable diseases at the earliest possible time during their incarceration. Because of the prevalence of head and body lice among inmates and because of the difficulty in sanitizing an area after lice have been found, one of the prime objectives of this search is to determine if an inmate has such lice.

The Shelby County Commission contracted with the Shelby Baptist Medical Center ["SBMC"] to provide medical services within the Shelby County jail.

9

Under this contract, SBMC provided a nurses assistant and a registered nurse to the jail; those individuals generally worked Monday through Friday from 7:00 a.m. to 2:00 p.m. In exchange for these services, Shelby County reimbursed SBMC on an expense reimbursement basis, consisting of the salaries of the nurses assistant and registered nurse, supplies purchased by SBMC, and any services provided directly by SBMC. SBMC is a not-for-profit corporation, and the contract between SBMC and Shelby County was performed on a not-for-profit basis.

Although Sheriff Jones has adopted a policy requiring inmates to undergo a body search for communicable diseases at the earliest possible time, he has not promulgated any regulations with respect to how this search is to be performed. Instead, the manner in which this kind of search is to be conducted is controlled by procedures promulgated by SBMC and conveyed by SBMC to its employees. Under these procedures, when there is a body search for lice, cranial and pubic hair both are examined, but there is no unnecessary contact with the inmate, nor are the inmate's genitals touched.

As with the booking search, this court applies the *Bell* balancing factors of scope, manner, justification and place with respect to this communicable disease search.[6] *Bell,* 441 U.S. at 559, 99 S. Ct. at 1884. The search took place in the

---

[6] Both Skurstenis and the district court emphasized that this search was conducted a short time before Skurstenis was released from the jail, intimating that the search was some kind of "exit"

10

infirmary, with no one present except Skurstenis and the nurses assistant. The intrusion was minimal, and, because of the threat of the transmission of body lice among inmates, the search was certainly justified. This leaves only the consideration of the manner in which the search was conducted. It was this factor which was of the greatest concern to the district court, and it found the search highly offensive because it was conducted by a male upon a female. The district court failed to give proper weight, however, to the fact that the male was part of the medical staff of a hospital and was a nurses assistant.

Although courts seem virtually unanimous in condemning strip searches conducted by prison personnel of the opposite sex except in the most extreme of circumstances, they are not so outspoken when it comes to strip searches by medical personnel. Indeed, on those rare occasions when courts have discussed strip searches by medical personnel, it is to point out that body cavity searches should be performed by medical, not jail, personnel. The sex of the medical person conducting the search is either not identified or is mentioned only for informational purposes. *See, e.g., Torres v. Wisconsin Department of Health and Social Services,* 859 F.2d 1523 (7th Cir. 1988) (en banc) (recognizing, in a Title VII suit

---

search. However, the search was conducted at the first opportunity by medical personnel and was conducted the morning that Skurstenis was released only because the medical personnel did not arrive until that time. The fact that the search preceded Skurstenis's release from custody by just a few minutes was merely coincidental.

11

brought by male officers challenging a decision to permit only female officers in the living units of an all-female prison, that the Wisconsin Administrative Code requires strip searches to be performed "in private by an officer of the same sex" and that "[b]ody cavity searches are only performed by medical personnel in emergencies"); *Bonitz v. Fair*, 804 F.2d 164 (1st Cir. 1986) (finding body cavity searches by prison officers unconstitutional and noting that the officers conducting the searches "did not follow prison instructions that required internal examination of body cavities to be conducted by medical personnel"), *overruled on other grounds, Unwind v. Campbell,* 863 F.2d 124 (1st Cir. 1988); *Daugherty v. Harris,* 476 F.2d 292 (10th Cir. 1973) (upholding rectal searches "carried out by trained paraprofessional medical assistants"); *Tribble v. Gardner*, 860 F.2d 321 (9th Cir. 1988) (holding that prison officials were not entitled to qualified immunity when digital rectal searches were not reasonably related to legitimate penological concerns and were conducted for punitive purposes but also noting that the searches were conducted by a "physician's assistant"); *Hurley v. Ward*, 584 F.2d 609 (2d Cir. 1978) (holding visual searches of the anal and genital areas of prisoners without probable cause to be unconstitutional but quoting New York law as follows: "If there is reasonable cause to believe contraband has been concealed

in a body cavity, the inmate shall be immediately examined and/or x-rayed by a facility health staff member").

Holding that it is not inappropriate for medical personnel to conduct a strip search of an inmate of the opposite sex and determining that the examination of Skurstenis for body lice was otherwise reasonable, this court concludes that Sheriff Jones and Richey did not violate Skurstenis's constitutional rights. Consequently, the district court's orders denying them summary judgment are reversed.

## III. SUMMARY

In these consolidated appeals, Skurstenis has alleged that her Fourth Amendment rights were violated by the booking and infirmary strip searches performed on her while she was a detainee in the county jail following her arrest. Having found that Skurstenis's constitutional rights were not violated by either the booking search or the infirmary search, this court AFFIRMS, although on different grounds, the district court's order granting summary judgment to Sheriff Jones, Captain Watts, Deputy Blankenship, and Deputy Smitherman with respect to the booking search; this court AFFIRMS the district court's order granting summary judgment to Captain Watts as to the infirmary search; and this court REVERSES the district court's order denying qualifying immunity to Sheriff Jones and Richey

with respect to the infirmary search and directs that Skurstenis's claims against them with respect to the infirmary search be dismissed with prejudice on remand.

AFFIRMED in part; REVERSED and REMANDED in part.